PAUL COBB AND VICKI COBB, DOING BUSINESS AS WINEGLASS
RANCH, APPELLANTS AND CROSS-APPELLEES, V. SURE CROP
CHEMICAL CO. AND SIMPLOT, INC., DIVISIONS OF J.R. SIMPLOT CO.,
APPELLEES AND CROSS-APPELLANTS.

587 N.W. 2d 355

Filed December 4, 1998.    No. S-97-512.

T.J. Hallinan, of Cobb & Hallinan, P.C., for appellants.

Jeffrey A. Silver for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This case arises out of a jury trial in which both parties asserted breach of contract actions. The jury found against both parties as to their respective claims. Appellants and cross-appellees Paul Cobb and Vicki Cobb, doing business as Wineglass Ranch (the Cobbs), ask this court to reverse the district court's judgment on grounds that the district court improperly instructed the jury and improperly sustained a demurrer to their operative petition's second cause of action. Appellees and cross-appellants Sure Crop Chemical Co. and Simplot, Inc., divisions of J.R. Simplot Co. (collectively Sure Crop), ask this court to reverse the district court's dismissal of their motion for directed verdict on their counterclaim. We affirm the district court's judgment in all respects.

## BACKGROUND

The Cobbs operate a ranch southeast of Minatare, Nebraska. In the spring of 1994, the Cobbs decided to plant 25 acres of alfalfa to provide feed for the cattle they raise. Paul Cobb (Cobb) talked with local area farmers about using preemergent herbicides, and most suggested the use of Eptam. The local state cooperative extension office also recommended Eptam. In late May 1994, Cobb met with Donald E. Dillman, who sells herbicides and incorporates them into the soil, to discuss incorporating a herbicide into a field where Cobb planned to plant alfalfa. Dillman does business under the name "Sure Crop" and is a salesperson for Simplot, Inc.

Cobb and Dillman gave contradictory accounts of their conversations which formed the oral contract now at issue. Cobb testified that he drove to Dillman's place of business and asked Dillman about applying Eptam on Cobb's 25-acre field as a preemergent. Cobb said Dillman told him he would have to disk the ground twice and then, after the application, disk the soil

again as soon as possible. Cobb said that in the first week of June 1994, he called Dillman, stating that he had prepared the ground. Cobb said he recalled having no other conversations prior to Dillman's application of the herbicide.

Dillman, on the other hand, testified that at a cafe in Minatare he and Cobb first discussed establishing an alfalfa crop. Dillman said Cobb told him he wanted to use Eptam. Dillman said he and Cobb drove to the field where Cobb planned to plant the alfalfa. Standing at the edge of the field, Dillman said he observed corn stalks and other residue in the field, and he then told Cobb that Cobb could not use Eptam because Eptam required simultaneous incorporation and the stalks and residue would plug up his incorporator. Dillman said he then suggested the application of the herbicide Treflan E.C. instead of Eptam. He said he suggested Treflan E.C. because it controls the same weeds as Eptam, except for nightshade, yet Treflan E.C. has a longer incorporation time that would permit Cobb to incorporate the chemical by disking after Dillman had applied it. Dillman said he asked Cobb if the field contained nightshade and said Cobb indicated it did not. Dillman admitted that he did not closely inspect the field to determine what types of weeds were growing. Dillman said Cobb orally agreed to use Treflan E.C. Dillman said he told Cobb that he would need to disk the ground twice in a cross pattern after the Treflan E.C. was applied.

Cobb did not deny such conversations occurred, but testified that he did not recall going out to his field with Dillman, discussing the incorporation problem with Eptam, or having any conversation with Dillman in which Treflan E.C. was discussed.

On June 7, 1994, Dillman applied Treflan E.C. to the Cobbs' field. Cobb disked the ground once and about 2 days later, planted alfalfa in the field. Cobb said he first discovered that Treflan E.C. had been applied when he reviewed Dillman's bill in July.

Weeds outgrew the alfalfa, and by August 1994, the weeds were 2½ to 3 feet tall throughout the field. In some parts of the field, no alfalfa grew. Although he expected 1 to 1½ tons of alfalfa that year, Cobb claimed the entire 1994 crop was a loss.

Over the course of the winter, Cobb repeatedly told Dillman that he would pay Dillman's bill. He did not.

Cobb testified that in 1995 and 1996, he harvested between 2 and 2½ tons less of alfalfa than he expected and attempted to sell it as "green chop," but it was worthless because it was too weedy.

The Cobbs filed the instant action against Sure Crop in November 1995. Their amended operative petition, filed in February 1997, asserted two causes of action for money damages. In the first cause of action, the Cobbs alleged that they had entered into a contract with Sure Crop to apply Eptam on the 25-acre field for the purpose of controlling weeds, but Sure Crop applied Treflan E.C., and that such action caused the destruction of alfalfa because the Treflan E.C. did not control the weeds. In the second cause of action, the Cobbs allege that they had entered into a contract with Sure Crop to apply Eptam, that Dillman inspected the field prior to application, and that weeds were visible for identification. The Cobbs allege that they relied on the expertise of Dillman to determine if Eptam would control the weeds visible in their field; that Dillman had a duty to make a proper inspection of the field; that Dillman chose and applied Treflan E.C.; that Treflan E.C., by its own label, is unfit for use on seedling alfalfa; and that the application of Treflan E.C. destroyed the alfalfa by not controlling the weeds. Sure Crop counterclaimed for money damages, alleging that the Cobbs requested that Treflan E.C. be applied, that Sure Crop did so, and that the Cobbs did not pay the bill for the contracted goods and services.

Sure Crop moved for summary judgment, which the district court denied. Sure Crop then demurred, stating that the Cobbs' second cause of action failed to state facts upon which relief could be granted. On March 14, 1997, the trial court sustained the demurrer on those grounds, stating that the Cobbs' second cause of action was duplicative of the first. The court gave the Cobbs leave to amend their petition, but the Cobbs did not amend.

At trial, a nonscientific sampling of weeds growing in the Cobbs' alfalfa field in the fall of 1995 was introduced into evidence. Emery W. Nelson, a former University of Nebraska pest

coordinator and author of the "Nebraska Weed Book," testified for the Cobbs that many of the weeds listed would have competed for moisture and sunlight with the alfalfa. Nelson said that of the 10 weeds sampled, Treflan E.C. would control only 1 of them. However, he also said Eptam would be equally ineffective against the weeds sampled. Sure Crop's witness Robert G. Wilson, a University of Nebraska agronomy professor, also testified that both Treflan E.C. and Eptam would control only 1 of the 10 weeds sampled. Nelson said that although not in the sampling, nightshade was very common in that area, and Treflan E.C. would not control nightshade. Nelson testified that both Eptam and Treflan E.C. would have a similar, temporary negative impact on the growth of seedling alfalfa.

Nelson testified that with seedling alfalfa, Treflan E.C. was approved for use only on ground within the federal government's Acreage Conservation Reserve Program. Nelson opined that application of Treflan E.C. on the Cobbs' field would have been an improper application. See Neb. Rev. Stat. § 2-2646(4) (Reissue 1997). Dillman admitted he knew of the restriction on Treflan E.C., but assumed the Cobbs' field was in the program.

At the conclusion of the Cobbs' case, Sure Crop moved for a directed verdict on the Cobbs' claim. The trial court overruled the motion. Sure Crop reinstated the motion at the close of its case, and the Cobbs also moved for a directed verdict on their claim. The trial court overruled both motions.

The jury returned a verdict against the Cobbs on the Cobbs' claim and against Sure Crop on Sure Crop's counterclaim.

## ASSIGNMENTS OF ERROR

The Cobbs assign, restated, that the district court erred in (1) sustaining Sure Crop's demurrer to their second cause of action; (2) failing to properly instruct the jury regarding the duties of an applicator of herbicides; and (3) failing to properly instruct the jury as to all of the elements of their case, in particular by failing to instruct that they could recover if the application of Treflan E.C. either damaged the alfalfa plants themselves or failed to control the weeds, thereby preventing the alfalfa from germinating and developing a proper stand.

On cross-appeal, Sure Crop assigns that the district court erred in failing to sustain its motion for a directed verdict on its counterclaim.

## SCOPE OF REVIEW

In reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from such facts, but does not accept conclusions of the pleader. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992); *Crow v. Giebelhaus*, 241 Neb. 4, 486 N.W.2d 207 (1992). Whether a petition states a cause of action is a question of law regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995); *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995); *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997); *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997). In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997); *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

## ANALYSIS

### Demurrer to Cobbs' Second Cause of Action

The Cobbs contend the district court improperly sustained Sure Crop's demurrer to their second cause of action. Sure Crop argues that the Cobbs' appeal is untimely, given that they waited until trial was had on their remaining cause of action before appealing the demurrer. We reject Sure Crop's argument. In *Carlson v. Metz*, 248 Neb. 139, 532 N.W.2d 631 (1995), we stated that a demurrer is not the same as a dismissal of a case.

The sustaining of a general demurrer that is not followed by a judgment of dismissal terminating the litigation does not constitute a reviewable final order. *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996); *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995). Where a demurrer is sustained as to one cause of action in a case which has multiple causes of action, the case still pends until dismissed. *Carlson v. Metz, supra*. Such was the case here, and so the Cobbs' appeal of the order that sustained the demurrer is timely.

In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Carlson v. Metz, supra*; *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994). In their appellate brief, the Cobbs state that their second cause of action asserts sufficient facts to state a claim for breach of implied warranty of fitness for a particular purpose. Neb. U.C.C. § 2-315 (Reissue 1992) provides and defines such an action, and it states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Assuming all facts pled in their second cause of action are true, see *Crow v. Giebelhaus, supra*, the Cobbs' operative petition fails to state a claim for implied warranty of fitness for a particular purpose. The Cobbs' second cause of action alleges: (1) Cobb contacted Dillman and requested that Eptam be used for a preemergent on the alfalfa seeding; (2) the Cobbs entered into a contract with Sure Crop "for the purpose of application of Eptam on 25 acres to be planted with alfalfa"; (3) the purpose of applying the Eptam was to control weeds; (4) Dillman made an inspection of the field in question; (5) the Cobbs "relied on the expertise of . . . Dillman . . . to determine if the Eptam would or would not, in fact, control the visible weeds in said field"; (6) "it is part of . . . Dillman's duty . . . to make an inspection of the type of weeds and to determine what pesticide would be effec-

tive on them and to so advise the customer"; and (7) "[t]hat, without the consent or knowledge of [the Cobbs], [Sure Crop] applied Treflan EC to [the Cobbs'] land in question . . . ."

Pursuant to § 2-315, implied warranties are imposed upon goods when and only when they become the subject of a contract for their sale. See, e.g., *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095 (3d Cir. 1980) (holding trial court erred when it permitted jury to consider U.C.C. implied-warranty theories where evidence was insufficient to prove defective product at issue was sold); *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So. 2d 351 (Fla. App. 1977) (holding that U.C.C. implied-warranty action requires pleading of facts in respect to sale of goods); *Patrick v. Sferra*, 70 Wash. App. 676, 855 P.2d 320 (1993) (holding implied warranty of fitness for particular purpose cannot lie where goods were subject of gift rather than sale); *Johnson v. National Sea Products, Ltd.*, 35 F.3d 626, 630 (1st Cir. 1994) (stating "absent any sale of the fish or contract for the sale of the fish, no warranty of merchantability could have attached"). In other words, the implied warranty of fitness for a particular purpose attaches only to the subject of the contract for sale. Indeed, a seller cannot impliedly warrant a product's fitness for a particular purpose when that product is not a part of the sales contract. Regarding the related implied warranty of merchantability, Neb. U.C.C. § 2-314 (Reissue 1992) expressly states this obvious requirement, and it is also implicit within the language of § 2-315.

In the instant case, the Cobbs allege that the subject of the contract for sale was Eptam. Thus, any implied warranty of fitness for a particular purpose necessarily attached to the sale of Eptam. However, within the same cause of action, the Cobbs allege, and we assume as true, that Sure Crop applied Treflan E.C. Because Treflan E.C. was not the subject of the contract for sale, no implied warranties could have attached thereto. Sure Crop simply could not have impliedly warranted Treflan E.C.'s fitness for the Cobbs' purposes when Sure Crop had not contracted to supply the Cobbs with Treflan E.C. Therefore, we conclude that the trial court correctly sustained Sure Crop's demurrer to the Cobbs' second cause of action for failure to state a claim.

### Jury Instruction No. 2

At the instruction conference, the Cobbs' counsel objected to the court's jury instruction No. 2, which presented the claims of the parties and the burden of proof. The Cobbs contend they were prejudiced by the district court's failure to specifically instruct the jury that they could recover if the application of Treflan E.C. damaged the new alfalfa *or* that it also did not control the weeds. The court's jury instruction No. 2, as presented to the jury, described the Cobbs' claim as follows:

> The plaintiffs ask for $9,534.50 crop damages for a claimed breach of contract . . . .
>
> . . . [T]he plaintiffs allege that an agreement was made between the plaintiffs and the defendant to spray a chemical, Eptam, on the plaintiffs' alfalfa field; and the defendant mistakenly applied Treflan EC, which caused crop damage.

The Cobbs instead requested the jury be instructed in the following manner:

> Plaintiffs . . . claim that they entered into a contract with the defendants . . . to apply Eptam for the purpose of controlling weeds on 25 acres to be planted with alfalfa. Plaintiffs further claim that defendants did not use Eptam on the field but instead sprayed it with Treflan EC . . . . Plaintiffs further allege that [the] defendants' use of Treflan EC, which damaged the new alfalfa and did not control the weeds, proximately result[ed] in loss of crop and additional labor and seed, in the total amount of $9,534.50, together with the costs of this action.

The court's instruction explained the Cobbs' burden of proof as follows:

> Before the plaintiffs can recover on their petition, they must establish by the greater weight of the evidence, each and every one of the following elements:
>
> 1. That the plaintiffs and the defendant did agree that the chemical Eptam was to be applied to the alfalfa field;
>
> 2. That the defendant breached that agreement by applying Treflan EC instead of Eptam;
>
> 3. That the application of Treflan EC proximately caused some damage to the plaintiff; and

4. The extent of that damage measured reasonably certain by profits lost as a proximate result of the incorrect chemical.

. . . .

A **proximate cause** is a cause that produces a result in a natural and continuous sequence, and without which the result would not have occurred.

The Cobbs instead requested that the third element of proof read that "the Treflan EC failed to control weeds and damaged the alfalfa crop and thereby was a proximate cause of some damage to the plaintiffs." The Cobbs contend that because the court failed to include the requested language in their claim's description and in the elements of proof, the jury "was unable to consider the effect the uncontrolled weed growth had on the seedling alfalfa plants." Brief for appellants at 22.

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998); *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). The court's instruction, as given, did not prejudice the Cobbs. For clarity, the explanation of the Cobbs' claim given in the instruction could have added the words "proximately" or "directly or indirectly" to the line that ends with "which caused crop damage." However, that failure did not prevent them from arguing about "the effect the uncontrolled weed growth had on the seedling alfalfa plants." The third element of proof given by the court stated that "the application of Treflan EC *proximately caused some damage* to the plaintiff" (emphasis supplied), combined with the court's definition of proximate cause, provided the necessary support for the Cobbs' claim. The Cobbs could have argued to the jury that they should recover if application of Treflan E.C. did not control the weeds in their field as well as Eptam.

PROPOSED JURY INSTRUCTION ON
HERBICIDE APPLICATOR'S DUTIES

The Cobbs proposed an instruction which read: "You are instructed that Nebraska law requires the commercial applicator of herbicides to, among other things, specify the type of weed to be controlled, the location of the application, and the trade name and registration number of the herbicide to be applied." Sure Crop's counsel objected, on the ground that the duties stated in the instruction are regarding the use of *restricted-use* herbicides and pesticides, yet Treflan E.C. is not a restricted-use herbicide. The court refused to give this instruction.

The court's refusal to give this proposed instruction was proper. The language from the Cobbs' proposed instruction comes from 25 Neb. Admin. Code, ch. 2, § 006.02 (1997), which requires specific recordkeeping procedures for commercial and noncommercial applicators of restricted-use pesticides and herbicides. However, Nelson testified at trial that Treflan E.C. is not a restricted-use herbicide. His testimony was undisputed. No evidence was presented on whether Eptam is a restricted-use herbicide. Thus, while the tendered instruction is a correct statement of the law as to restricted-use herbicides, the tendered instruction is not warranted by the evidence. See, *Tapp v. Blackmore Ranch, supra*; *Walkenhorst v. State, supra*. Instructing the jury as to statutory duties when applying restricted-use herbicides where they appear to have no application to this case would have a tendency to confuse and mislead the jury regarding the issues properly raised in the case.

PROPOSED JURY INSTRUCTION ON
HERBICIDE APPLICATOR'S LIABILITY

The Cobbs proposed an instruction which read: "You are instructed that both federal and state law provide that if injury or damage results from unauthorized use of a herbicide, then the applicator is liable for that damage." The court refused to give the instruction.

The proposed instruction states in essence that Sure Crop would be liable to the Cobbs for violating a statute if the viola-

tion caused injury or damage. The instruction sounds in strict liability because it instructs the jury that the Cobbs may recover if Sure Crop used Treflan E.C. in violation of its label restrictions. However, the Cobbs' action is for breach of contract, specifically, a contract to apply a particular chemical, Eptam, to their field. The Cobbs characterize the action as such in their proposed jury instructions, and the district court did so as well in the instructions it gave to the jury, with no objection from the Cobbs. Any damages in their contract action must be in relation to a breach of the contract formed. A party is not entitled to a jury instruction on a theory of the case not presented by the pleadings. *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996). Additionally, the proposed instruction referred to damages as they relate to damage from an illegal application of herbicide, not damage related to a breach of contract. The instruction could mislead the jury into believing that the Cobbs were entitled to recover, even absent a breach of contract. A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). The district court did not err in refusing the Cobbs' proposed instruction because it was not based upon the theories of the case presented by the pleadings and because it more than likely would have confused the jury in regard to the basis on which the Cobbs could recover damages.

## COUNTERCLAIM

Sure Crop contends the district court erred when the court overruled its motion for directed verdict on its counterclaim, because the only conclusion reasonable minds could draw from the testimony presented at trial is that Sure Crop and the Cobbs entered a contract to apply Treflan E.C. A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996). Such is not the case here. If Cobb's testimony is believed, he and Dillman entered into an oral contract to supply and apply Eptam, not Treflan E.C. Thus, a jury could reasonably conclude that the contract

was not for Treflan E.C., contrary to what Sure Crop's counterclaim requires to recover damages. We conclude, then, that the district court properly overruled Sure Crop's motion for directed verdict on its counterclaim.

## CONCLUSION

We affirm the district court's judgment in all respects. The second cause of action in the Cobbs' amended, operative petition did not state a claim. Two of the Cobbs' proposed jury instructions which the district court refused to give either were not supported by the evidence or likely would have misled the jury. The court's jury instruction No. 2, which the district court did not modify as the Cobbs requested, did not prejudice the Cobbs.

Sure Crop's counterclaim was not proved as a matter of law, and thus the district court's dismissal of Sure Crop's motion for directed verdict was entirely proper.

AFFIRMED.