MOBECO INDUSTRIES, INC., APPELLEE AND CROSS-APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE.
BERNARD J. MORELLO, APPELLEE AND CROSS-APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE.

598 N.W.2d 445

Filed July 30, 1999.   Nos. S-98-112, S-98-113.

Paul Kratz, Omaha City Attorney, and Bernard J. in den Bosch for appellant.

David A. Domina and Eric M. Johnson, of Domina Law Office, P.C., for appellees Mobeco Industries and Morello.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

This appeal arises from a condemnation action instituted by the City of Omaha (City) against seven urban lots. Five of the tracts were owned by appellee Mobeco Industries, Inc., and two were owned by appellee Bernard J. Morello, president and sole shareholder of Mobeco Industries. Aside from the ownership of the property, there is no difference between Mobeco Industries and Morello, and for convenience, they both will be referred to as "Mobeco." We reverse the jury's verdict and remand the cause for a new trial.

## BACKGROUND

The City acquired the seven lots by the filing of a condemnation proceeding on January 20, 1995. The underdeveloped subject tracts are located within the Kellom Heights neighborhood, an approximately 39½-acre area bounded by Cumming Street on the south, Hamilton Street on the north, 24th Street on the east, and 27th Street on the west. The Omaha City Council, by a resolution dated November 22, 1977, designated the area as substandard and blighted because of its location, topography, and dated infrastructure. The City recertified the area as substandard and blighted on June 4, 1985, and on June 2, 1992. The record shows that between 1992 and 1995, government-subsidized, multifamily housing was built immediately near the subject properties.

Each party adduced expert testimony as to the value of the subject properties at the time of the taking. Mobeco's expert

opined that the subject property had a value of $363,000, based on $6.41 per square foot. The City's two experts opined that the property had a value of $.25 per square foot, for a total value of $14,080. The trial court granted Mobeco's motion to allow the jury to view the properties. The City objected because the properties had been improved since the date of taking.

At the jury instruction conference, the City requested that the jury be instructed on the third paragraph of NJI2d Civ. 13.02, which states that increases in value of a property due to the public improvement for which it was acquired, or the likelihood that the property would be so acquired, cannot be taken into account in determining the value of the property. This instruction was refused by the trial court.

The jury returned a total valuation of the seven properties of $363,000, or approximately $6.41 per square foot, which was the price testified to by Mobeco's expert. In addition, the trial court awarded Mobeco $40,000 in attorney fees, $2,900 in expert witness fees, and costs. Mobeco cross-appeals that the attorney fees awarded should have reflected the actual attorney fees calculated under a contingency fee agreement.

## STANDARD OF REVIEW

A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998).

## ASSIGNMENTS OF ERROR

The City assigns that the trial court erred in (1) granting Mobeco's motion for the jury to view the subject property in light of changed conditions since the date of taking, (2) refusing to include the third paragraph of NJI2d Civ. 13.02 in the jury instructions, and (3) refusing to strike Mobeco's expert's opinion on the value of the subject properties for lack of similarity between the subject properties and properties used for comparison purposes.

## ANALYSIS

The City argues that the trial court should have given the third paragraph of NJI2d Civ. 13.02 in the jury instructions, which

states that "[i]n determining the amount of compensation to be paid, you must not consider any change in the fair market value of the property caused by the public improvement or by the knowledge that the improvement would be (constructed, altered, et cetera)." NJI2d Civ. 13.02. The City argues that this instruction should have been given because the takings involved land that was part of a public development and the jury was allowed to view the land after some public improvement had taken place. The City also contends that the failure to give this instruction, in light of the jury's having actually viewed the property, was prejudicial.

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998); *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998).

■ Mobeco argues that the third paragraph of NJI2d Civ. 13.02 is based on Neb. Rev. Stat. § 76-710.01 (Reissue 1996) and that the statute applies only when severance damages are involved. Mobeco contends that because severance damages are not an issue in this case, the trial court was correct in refusing to include the third paragraph of NJI2d Civ. 13.02 in the jury instructions. We disagree. Section 76-710.01 states that condemnation damages "shall include *all* compensable damages suffered by the condemnee *including but not limited to* reasonable severance damages . . . ." (Emphasis supplied.) By its plain language, § 76-710.01 is not limited to severance damages.

■ In 4 Julius L. Sackman, Nichols on Eminent Domain § 12B.17[8][b] at 12B-261 (rev. 3d ed. 1999), quoting *United States v. Miller*, 317 U.S. 369, 63 S. Ct. 276, 87 L. Ed. 336 (1943), it states:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay

their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities."

The record in this case indicates that the City passed the condemnation ordinance in 1992 and that the Mobeco properties were included within the "Kellom Heights Amendment Two" project from its inception. Thus, Mobeco would not be entitled to be compensated for any increase in the value of the subject properties due to the partial completion of the project prior to the date of taking.

We conclude that the requested instruction was a correct statement of the law and that the evidence warranted the giving of the instruction. The only remaining question is whether the City was prejudiced by the trial court's failure to give the requested instruction. We conclude that the failure to give the requested instruction was prejudicial.

The jury was allowed to view the land after improvements in the blighted area had been completed. Without an instruction to the contrary, the jury could have taken these improvements into account in determining the value of the property. However, as we have previously indicated, the law does not permit compen-

sation for increases in the value of condemned property attributable to partial completion of the public project. Thus, the verdict against the City may have been inflated by the jury's consideration of improvements that it should have been instructed to ignore.

As the City has demonstrated that its requested instruction was a correct statement of the law which was warranted by the evidence and that the failure of the trial court to give the instruction prejudiced the City, the jury's verdict must be reversed, and the cause remanded for a new trial.

## CONCLUSION

Because the trial court's refusal to instruct the jury on the requested portion of NJI2d Civ. 13.02 was prejudicial error, we reverse the jury's verdict and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

McCORMACK, J., dissenting.

I respectfully disagree with the holding of the majority stating that the failure of the trial court to include the third paragraph of NJI2d Civ. 13.02 in the jury instructions was, in light of the jury's having actually viewed the property, prejudicial to the City. In this case, the jury had the benefit of hearing expert opinions on behalf of both Mobeco and the City. There were several pictures in evidence that the City's appraiser, Len Buckwalter, agreed accurately depicted the condition of the property in 1992 and 1995 when Buckwalter did his reinspection. I have carefully reviewed the testimony of all three expert witnesses, Ason Okoruwa, Buckwalter, and Dennis Knudson, and none of them speak as to any increases in value due to public improvements. The only reference to a public improvement was by the City's expert, Buckwalter, who testified that between his valuations done in 1992 and 1995, all of the apartments on the east side of 26th Street from the cul-de-sac north were occupied, multiple-family apartments with garages built below them. Yet, Buckwalter still valued this property at $.25 per square foot.

The jury had all of the information it needed to decide which of the appraisers' testimony was the most credible, and it obviously concluded that Mobeco's expert, who testified that the value of the property was $6.41 per square foot, was more cred-

ible than the City's expert, who assessed the fair market value of the property at $.25 per square foot. It should be noted that the City attempted to use 17 parcels of real estate as comparables, but 16 of those were Land Reutilization Commission properties being sold at surplus after their foreclosure.

While the requested portion of NJI2d Civ. 13.02 should have been given, the failure to do so did not constitute prejudicial error requiring a new trial. In order to establish reversible error from the court's failure to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the trial court's failure to give the tendered instruction. *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999); *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

I would affirm the judgment of the trial court rendered pursuant to the jury verdict and would also affirm the award of attorney fees in this case.

HENDRY, C.J., and GERRARD, J., join in this dissent.