RICHARD JAMESON AND SANDHILL OIL COMPANY,
APPELLEES AND CROSS-APPELLANTS, V. LIQUID CONTROLS CORP.,
APPELLANT AND CROSS-APPELLEE, AND AETNA CASUALTY
AND SURETY COMPANY, INTERVENOR-APPELLEE
AND CROSS-APPELLANT.

618 N.W.2d 637

Filed October 6, 2000.    No. S-99-048.

Jeffrey H. Jacobsen and Bradley D. Holbrook, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellant.

Robert G. Pahlke, of The Van Steenberg Firm, and Warren R. Arganbright, of Arganbright Law Office, for appellees.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for intervenor-appellee.

Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Liquid Controls Corporation (Liquid Controls) appeals from a jury verdict entered by the district court for Thomas County which found in favor of Richard Jameson (Richard) in a strict liability action against Liquid Controls and awarded him $5 million in damages. Liquid Controls claims the district court erred in denying its motion for reduction of judgment, in failing or refusing to give certain jury instructions, and in denying its amended motion for new trial. Aetna Casualty and Surety Company (Aetna), pursuant to its petition in intervention, cross-appeals the district court's ruling denying Aetna any subrogation interest in certain settlement proceeds received by Richard. Richard cross-appeals, claiming the district court erred in denying his posttrial motion for attorney fees and expenses. We affirm in part, and in part reverse the decision of the district court and remand the cause for further proceedings consistent with this opinion.

## II. STATEMENT OF FACTS
Richard is an employee of Sandhill Oil Company (Sandhill), a fuel delivery business owned and operated by Richard's father, Allan Jameson. Richard was injured in a work-related accident on July 16, 1995, when gasoline vapor from a fuel delivery truck owned by Sandhill escaped, igniting and burning Richard.

The truck was outfitted with a fuel pump manufactured by the Blackmer company and with a fuel meter manufactured by Liquid Controls. At the time of the accident, Richard and Allan Jameson were attempting to fix a problem with the truck's fuel delivery system. As part of that process, Allan Jameson loosened several bolts holding a strainer plate on the fuel meter. When the two men again attempted to pump fuel through the system, gasoline vapor escaped from where the bolts had been loosened and ignited. Richard was severely burned over more than 65 percent of his face and body.

As a result of his injuries, Richard received approximately $450,000 from Aetna in workers' compensation benefits.

On March 21, 1996, Richard and Sandhill filed a petition, suing Blackmer and Liquid Controls under separate theories of negligence and strict liability as to each defendant. Richard and Sandhill also sued two other defendants who were dismissed prior to trial. Attached to the petition was an assignment from Tammi Jameson, Richard's wife, assigning her loss of consortium claim to Richard, which claim Richard and Sandhill also raised against Liquid Controls and Blackmer in the petition. Richard and Sandhill sought damages for Richard's past and future medical expenses, past and future lost earnings, disability, and pain and suffering. Richard also sought damages as assignee under Tammi Jameson's loss of consortium claim.

On April 22, 1996, Blackmer answered Richard and Sandhill's petition. Blackmer amended its answer on October 28, 1998. Liquid Controls filed its initial answer on August 30, 1996. On October 16, 1998, Liquid Controls filed an amended answer. In their separate amended answers, Blackmer and Liquid Controls, inter alia, denied the petition's allegations and affirmatively alleged that Richard's injuries were caused by Richard's and Allan Jameson's negligent actions. In its amended answer, Liquid Controls also alleged that its fuel meter was manufactured according to the state of the art.

On August 5, 1996, Aetna filed a petition in intervention in the action and claimed a subrogation interest in any settlement or judgment Richard might receive. According to the record, Aetna's counsel attended 39 depositions, conferred with Richard

and Sandhill's counsel, participated in trial preparation, and observed portions of the trial.

The 8-day jury trial began on November 30, 1998. The record contains approximately 1,800 pages of testimony from 27 witnesses and over 200 exhibits. To the extent they are necessary, further facts and rulings from the trial are incorporated in our analysis below.

On December 9, 1998, after the close of evidence but before the case was submitted to the jury, Blackmer settled with Richard and Sandhill and was dismissed with prejudice from the case. The record does not contain a written copy of any settlement agreement. According to counsels' representations to the court in the bill of exceptions and in posttrial pleadings, Blackmer agreed to pay a total of $1.425 million in settlement as follows: (1) $25,000 to Garnett Jameson, Richard's mother, and Allan Jameson, and (2) $1.4 million to Richard and Tammi Jameson. Of this $1.4 million, $250,000 was to be used to fund a trust for Richard's benefit and $950,000 was to be paid directly to Richard. The record is unclear if the remaining $200,000 was to be paid directly to Tammi Jameson or paid to Richard as the assignee of Tammi Jameson's loss of consortium claim.

On December 9, 1998, the case against Liquid Controls was submitted to the jury. The record shows that the case against Liquid Controls was submitted with Richard as the only plaintiff and that the only theory of liability submitted to the jury was strict liability. The jury was told that Blackmer was no longer a party to the case but was not told that Blackmer had settled out. The jury was not asked to apportion or consider Blackmer's liability. As part of Richard's burden of proof, however, the jury was instructed to consider the actions of Sandhill and its employees and whether those actions might have caused Richard's injuries. Specifically, the jury was instructed in instruction No. 2 as follows:

> In this regard, you may consider whether the injury suffered by Richard Jameson was caused solely by the conduct of Sandhill Oil Company or its employees. If you do not find that the actions of Sandhill Oil Company or its employees were the only proximate cause of the plaintiff's

injury, you may not consider that conduct in any way in determining the issues involving the defendant, Liquid Controls. If you find that the actions of Sandhill Oil Company or its employees were the only proximate cause of the plaintiff's injury, your verdict will be for the defendant.

Further, you may not consider in any way the actions of the Plaintiff, Richard Jameson, in determining whether the defendant, Liquid Controls is strictly liable under Nebraska law.

On December 10, 1998, the jury returned a verdict against Liquid Controls and in favor of Richard in the amount of $5 million. Following the jury verdict, on December 17, Liquid Controls filed its motion for new trial. On December 29, Liquid Controls filed an amended motion for new trial and a motion for reduction of the judgment based upon the Blackmer settlement. On January 6, 1999, Richard filed a posttrial motion for a determination of attorney fees pursuant to Neb. Rev. Stat. § 48-122 (Cum. Supp. 1996), which the district court also treated as a motion under Neb. Rev. Stat. § 48-118 (Cum. Supp. 1996), to determine Aetna's subrogation rights. All of these motions came on for hearing on January 6, 1999.

In an order dated January 11, 1999, the district court denied Aetna any subrogation rights in the Blackmer settlement proceeds, ruling that it would be inequitable to allow Aetna to invade the trust or recover funds arising from Richard's pain and suffering or loss of consortium claims. The district court also ruled that it was premature to determine whether Aetna had any subrogation interest in the judgment in Richard's favor against Liquid Controls because those proceeds had not been and would not be paid out until after the appeal process was concluded. The district court overruled all other posttrial motions.

Liquid Controls appealed. Aetna and Richard cross-appealed.

### III. ASSIGNMENTS OF ERROR

On appeal, Liquid Controls has assigned four errors, which combine to form three. Liquid Controls claims, restated, that the district court erred (1) in overruling its motion for a reduction of the jury's verdict because it was entitled to a credit as a result of

the Blackmer settlement; (2) in failing or refusing to instruct the jury as to Liquid Controls' affirmative defenses; and (3) in overruling Liquid Controls' motion for new trial because the jury verdict was excessive and was the result of speculation, guess, or conjecture.

On cross-appeal, Aetna assigns three errors which combine to form one. Aetna claims that the district court erred in determining that Aetna was not entitled to any payment from the Blackmer settlement funds in order to satisfy its subrogation interest.

On cross-appeal, Richard assigns as error the district court's failure to award attorney fees and expenses out of any recovery by Aetna.

## IV. STANDARDS OF REVIEW

■ On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Hausman v. Cowan*, 257 Neb. 852, 601 N.W.2d 547 (1999); *Gallner v. Gallner*, 257 Neb. 158, 595 N.W.2d 904 (1999).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowan, supra*; *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Hausman v. Cowan, supra*; *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Hausman v. Cowan, supra*; *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999).

■ The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Hausman v. Cowan, supra; Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999).

## V. ANALYSIS

### 1. LIQUID CONTROLS' APPEAL

#### (a) Reduction of Judgment Against Liquid Controls

Liquid Controls argues on appeal that as a result of Richard's settlement with Blackmer, the $5 million judgment entered against Liquid Controls should be reduced either pro rata or pro tanto and that the district court erred in denying Liquid Controls' motion for a reduction of the judgment. Under a pro rata reduction, the judgment would be reduced proportionately by the total number of defendants, which in this case would amount to a 50-percent reduction in the jury verdict. See *Dist. of Columbia v. Shannon*, 696 A.2d 1359 (D.C. 1997). If the judgment was reduced pro tanto, Liquid Controls would receive a credit against the judgment in favor of Richard in an amount equal to Richard's share of the Blackmer settlement. See *id*. We conclude that under Nebraska law, Liquid Controls is entitled to a pro tanto reduction of the judgment in the amount of Richard's share of the settlement with Blackmer and that the district court erred in denying Liquid Controls' motion for a reduction of the judgment.

We recently discussed the setoff of settlement proceeds against a judgment in *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). In *Vowers & Sons, Inc.*, the plaintiff-seller, Vowers & Sons, sued the defendant-buyer, Jerry Strasheim, alleging breach of a contract to purchase real estate. In a separate previous action, Vowers & Sons had sued Sheila Newell, the real estate agent who had prepared the purchase agreement, for negligence. Newell had paid an undisclosed sum of money in settlement of the claim, and as a result, the action against Newell had been dismissed with prejudice.

Strasheim alleged that because of the Newell settlement, Vowers & Sons was barred as a matter of law from pursuing its

claim against Strasheim under an election of remedies theory. We held that Vowers & Sons could proceed with its action against Strasheim. We noted, however, that the separate claims asserted against Strasheim and Newell seemed to seek redress for the same injury, and we stated the following:

> Our determination that this action against Strasheim may proceed does not mean that Vowers & Sons would be entitled to recover damages for the same injury twice. . . . As a general rule, a party may not have double recovery for a single injury, or be made "more than whole" by compensation which exceeds the actual damages sustained. . . . Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had. . . . Thus, to the extent that Vowers & Sons has received satisfaction from the settlement with Newell for injury and damage alleged in this action, any damages for which Strasheim would be potentially liable must be reduced pro tanto.

(Citations omitted.) *Id.* at 515-16, 576 N.W.2d at 825. See, also, *Fitzgerald v. Union Stock Yards Co.*, 89 Neb. 393, 131 N.W. 612 (1911) (injured party may have only one satisfaction for injury and if amount received in settlement is not in full satisfaction of claim, it serves as pro tanto bar to action against other tortfeasor). Based upon the reasoning in *Vowers & Sons, Inc.*, we hold that a pro tanto reduction of the judgment against Liquid Controls is appropriate in the instant case.

■ Richard and Sandhill alleged, inter alia, in their petition, that Blackmer and Liquid Controls, through strict liability, were each responsible for the July 16, 1995, accident that caused Richard's injuries. They did not allege separate acts leading to separate injuries. Instead, they sought an unspecified amount of damages against these two defendants as redress for the injuries Richard suffered in the accident. The jury determined that as a result of the injuries which Richard had suffered in the accident, he was entitled to a total of $5 million in damages. Since the jury found that $5 million is Richard's total award of damages for the injuries which he sustained in the July 16 accident, to the extent he received satisfaction from Blackmer for those same injuries, Liquid Controls is entitled to a pro tanto reduction of the judgment.

Our conclusion is in accord with the approach taken by other states. The South Carolina Court of Appeals gave the following explanation for allowing a pro tanto credit against a jury verdict in the amount of an earlier settlement with another defendant for the same cause of action:

"[T]he reason for allowing such a credit is to prevent an injured person from obtaining a second recovery of that part of the amount of damages sustained which has already been paid him. Or differently stated, it is almost universally held that there can be only one satisfaction for an injury or wrong."

*Hawkins v. Pathology Associates*, 330 S.C. 92, 113, 498 S.E.2d 395, 406-07 (S.C. App. 1998) (quoting *Truesdale v. South Carolina Highway Dept.*, 264 S.C. 221, 213 S.E.2d 740 (1975), *overruled on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985)). See, also, *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986) (applying state statute to reduce liability of nonsettling defendants pro tanto by amount paid to plaintiff by settling defendants).

We are aware that some authorities refuse to allow any credit if there has not been some determination of liability on the part of the settling defendant. See, e.g., *Green v. General Motors Corp.*, 310 N.J. Super. 507, 709 A.2d 205 (1998); *Fidelholtz v. Peller*, 81 Ohio St. 3d 197, 690 N.E.2d 502 (1998) (interpreting Ohio's Contribution Among Tortfeasors Act). See, also, Restatement (Third) of Torts: Apportionment of Liability § 26 (1999). Other courts allow either a pro tanto reduction where there has been no proof of liability by the settling defendant or a pro rata reduction if the liability of the settling defendant is established. See, e.g., *Dist. of Columbia v. Shannon*, 696 A.2d 1359 (D.C. 1997). For the reasons stated above, we believe a pro tanto reduction of the settlement amount, regardless of whether liability on the part of the settling defendant has been established, to be the better reasoned approach.

The record does not contain a copy of a written settlement agreement between Richard and Blackmer. It is undisputed, however, that Blackmer paid a total of $1.425 million in settlement and that as a result of this settlement, Blackmer was dismissed with prejudice from the litigation. From the record, it

appears that $25,000 was paid to Garnett Jameson and Allan Jameson, $950,000 was paid directly to Richard, and $250,000 was paid to establish a trust for Richard's benefit. The record is unclear if the remaining $200,000 was paid directly to Tammi Jameson or was paid to Richard as the assignee of her loss of consortium claim. Upon remand, the district court shall determine what portion of the $1.425 million settlement was paid either to Richard or on his behalf and, under the rule set forth in *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998), and adopted in this opinion, award Liquid Controls a pro tanto credit against the $5 million judgment against it in the amount paid by Blackmer to or on behalf of Richard in settlement.

Accordingly, we reverse the decision of the district court overruling Liquid Controls' motion for reduction of judgment and remand the cause for further proceedings consistent with this opinion.

### (b) Jury Instructions

On appeal, Liquid Controls assigns as error the district court's failure or refusal to instruct the jury on the affirmative defenses of assumption of risk, misuse, and state of the art. We conclude the district court did not err by failing or refusing to instruct the jury on these affirmative defenses, and we affirm the decision of the district court.

We have stated that "[a]ssumption of risk, under appropriate circumstances, may be an affirmative defense in an action brought for a manufacturer's strict liability in tort for a design defect." *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 449, 412 N.W.2d 56, 74 (1987). An affirmative defense must be specifically pled to be considered. *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999); *Rosberg v. Lingenfelter*, 246 Neb. 85, 516 N.W.2d 625 (1994). Liquid Controls, however, did not plead assumption of risk as an affirmative defense in its amended answer to Richard and Sandhill's petition. An affirmative defense not raised or litigated in the trial court cannot be urged for the first time on appeal. *Haag, supra*; *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997). Furthermore, Liquid Controls acknowledges in its brief on appeal that it did not offer a jury instruction on assumption of risk. Thus, there is no merit

to Liquid Controls' claim that the district court failed to instruct the jury on assumption of risk.

■ Liquid Controls also asserts that the district court should have instructed the jury on the issue of third-party misuse by Allan Jameson. In the law of products liability, misuse of a product is the use of a product in a way not reasonably foreseeable by the supplier or manufacturer. *Rahmig, supra.* Misuse of the product is a defense to strict liability. *Erickson v. Monarch Indus.,* 216 Neb. 875, 347 N.W.2d 99 (1984). This court has not ruled upon the issue of whether third-party misuse is a defense to strict liability in Nebraska, although we note that several jurisdictions have recognized third-party misuse to be an affirmative defense. See, generally, Annot., 65 A.L.R.4th 263 (1988 & Supp. 1999) (discussing those courts which expressly acknowledge third-party misuse).

Liquid Controls' amended answer does not set forth an affirmative defense of misuse. At the jury instruction conference, Liquid Controls objected to the district court's refusal to give a misuse instruction as to Richard. However, Liquid Controls did not offer a third-party misuse jury instruction as to Allan Jameson. Notwithstanding the foregoing posture of the case, the district court, nevertheless, instructed the jury in instruction No. 2, inter alia, that if it found that "the actions of Sandhill Oil Company or its employees were the only proximate cause of the plaintiff's injury, [its] verdict will be for the defendant."

Jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Hausman v. Cowan,* 257 Neb. 852, 601 N.W.2d 547 (1999); *Cobb v. Sure Crop Chem. Co.,* 255 Neb. 625, 587 N.W.2d 355 (1998). Through the instruction quoted above, the jury was permitted to consider Allan Jameson's actions, as Liquid Controls claims it should, when it determined liability for the accident. Under the record in the instant appeal, we need not decide whether third-party misuse is an affirmative defense in Nebraska. We simply note that Liquid Controls was not prejudiced by the district court's purported failure to instruct the jury specifically on the affirmative defense of third-party misuse.

Liquid Controls also claims the jury should have been instructed on the affirmative defense of state of the art, which affirmative defense Liquid Controls did set forth in its amended answer and upon which it offered a jury instruction. Because the evidence did not warrant the instruction, we conclude that the district court did not err in refusing to give a state-of-the-art instruction.

The state-of-the-art affirmative defense is set forth in Neb. Rev. Stat. § 25-21,182 (Reissue 1995), which provides:

> In any product liability action based upon negligent or defective design, testing, or labeling, proof establishing that such design, testing, or labeling was in conformity with the generally recognized and prevailing state of the art in the industry at the time the specific product involved in the action was first sold to any person not engaged in the business of selling such product shall be a defense. State of the art as used in this section shall be defined as the best technology reasonably available at the time.

The district court properly instructed the jury that the issues in the case included whether the meter was defective because the strainer screen was insufficient to guard against accumulation of particles which would result in jamming of the meter and whether the meter was defective because there were no warnings that the meter could become jammed with particles and, thus, a pressure gauge should have been installed so as to determine if the system could be opened safely.

There is no testimony directly stating what the generally recognized and prevailing state of the art was in the industry regarding the sufficiency of strainer screens, the custom regarding acceptable associated warnings, or the necessity of pressure gauges or that the Liquid Controls meter was or was not in conformity therewith. The only evidence to which Liquid Controls points in support of its argument that the district court erred in refusing to give its state-of-the-art affirmative defense is a question and answer from the cross-examination of Richard and Sandhill's expert witness, Dr. William Weins. In that exchange, Weins was asked whether it was his opinion that the fuel meter was manufactured "under" the standards of the state of the art, to which he responded that he thought that that was correct.

Weins did not testify that Liquid Controls' design and manufacture, identification of a defect or hazard, or warnings related thereto were the state of the art, which were the issues in the case and upon which the jury was instructed.

It is Liquid Controls' burden to demonstrate that an instruction on the state-of-the-art affirmative defense is warranted by the evidence. See *Hausman, supra; Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). Weins' comment, without more, is insufficient to support a jury instruction on the affirmative defense of state of the art. See *Nguyen v. Rezac*, 256 Neb. 458, 590 N.W.2d 375 (1999) (trial court's duty is to instruct jury on issues presented by pleadings and evidence). The district court did not err in refusing Liquid Controls' state-of-the-art jury instruction.

Based upon our review of the record, we conclude that the district court did not err in failing or refusing to instruct the jury on the affirmative defenses of assumption of risk, misuse, and state of the art. Accordingly, we find no merit to Liquid Controls' second assignment of error.

### (c) Denial of Amended Motion for New Trial: Jury Verdict

Finally, Liquid Controls argues that the district court erred in overruling its amended motion for new trial based on the claim that the jury verdict was excessive and resulted from speculation, guess, or conjecture. Specifically, Liquid Controls claims on appeal that the jury should not have been permitted to consider the testimony of Richard and Sandhill's expert witness, Dr. Curtis Cramer, an economist who testified as to Richard's loss of earning capacity based, in part, upon an oral agreement between Richard and Allan Jameson regarding Richard's future salary with Sandhill. Liquid Controls' argument on appeal is that the oral agreement was unenforceable because it violated the statute of frauds, and "[s]ince the oral argument [sic] was unenforceable, any reliance on it leads to a speculative result. Dr. Cramer's use of a speculative salary increase led to a speculative conclusion that the plaintiff's loss [sic] earning capacity would be approximately $2.3 million." Brief for appellant at 41.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an

abuse of discretion. *Hausman v. Cowan,* 257 Neb. 852, 601 N.W.2d 547 (1999). We conclude that the district court did not abuse its discretion in denying Liquid Controls' motion for new trial.

The defense of the statute of frauds is personal to the parties to the contract and their privies. It cannot be raised by a nonparty to the contract. *Grover, Inc. v. Papio-Missouri Riv. Nat. Res. Dist.,* 247 Neb. 975, 531 N.W.2d 531 (1995). Thus, Liquid Controls cannot object to the oral agreement between Sandhill and Richard. Further, assuming for purposes of argument only that it could object to testimony regarding the oral agreement, the record shows that Liquid Controls failed to raise such an objection at trial and thus waived its right to assert prejudicial error on appeal.

The instant case is similar to *Barks v. Cosgriff Co.,* 247 Neb. 660, 529 N.W.2d 749 (1995), in which the defendant assigned as error on appeal the admission of testimony regarding an alleged oral contract of employment. In *Barks,* we declined to reach the merits of this assignment of error because the defendant had failed to object to the evidence of the oral contract in the trial court. In *Barks,* we stated:

> Failure to make a timely objection waives the right to assert prejudicial error on appeal. . . . If, when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction, or fails to object or to insist upon ruling on the objection to introduction of such evidence, and otherwise fails to raise the question as to its admissibility, that party is considered to have waived whatever objection he or she may have had thereto, and the evidence is in the record for consideration the same as other evidence. . . . Since [the defendant] failed to object to [the] testimony regarding the alleged [oral contract], the testimony was properly before the jury for consideration.

(Citations omitted.) 247 Neb. at 665, 529 N.W.2d at 753.

Liquid Controls failed to object to Cramer's testimony regarding the oral contract concerning Richard's future salary with Sandhill and also failed to object to Cramer's testimony regarding Richard's lost future earnings based upon the oral contract. The terms of the oral contract and Cramer's testimony

concerning Richard's lost future earnings were in evidence, and the jury was free to consider such evidence in its award of damages. Accordingly, there is no merit to Liquid Controls' third assignment of error that the district court erred in overruling Liquid Controls' amended motion for new trial based on the claim that the jury verdict was the result of speculation, guess, or conjecture.

## 2. CROSS-APPEALS

### (a) Aetna's Subrogation Claim

The district court refused to award Aetna any subrogation interest in the Blackmer settlement proceeds, concluding that it would be "inequitable to allow Aetna to recover funds arising from pain and suffering or loss of consortium in order to satisfy its claims." The district court also refused to award Aetna a subrogation interest in the judgment against Liquid Controls because it was premature. On cross-appeal, Aetna specifically claims that the district court erred in refusing to award it any portion of the Blackmer settlement in partial satisfaction of Aetna's subrogation claim. We agree.

Aetna's subrogation interest is governed by § 48-118 of the Nebraska workers' compensation statutes, which section grants, inter alia, an employer's insurance company which has paid workers' compensation benefits to an employee injured by the actions of a third individual or entity a subrogation interest against that third individual or entity as a tort-feasor. See *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000). Section 48-118 was amended in 1994 and as amended provides, inter alia, as follows:

> If the employee or his or her personal representative and the insurer of the employer if there is one, and if there is no insurer, then the employer, do not agree in writing upon distribution of the proceeds of any judgment or settlement, the court upon application shall order a fair and equitable distribution of the proceeds of any judgment or settlement.

This amendment was effective July 16, 1994, 1 year before the accident in the instant case. We held in *Jackson v. Branick Indus.*, 254 Neb. 950, 581 N.W.2d 53 (1998), that this amendment was substantive in nature and applied prospectively only.

As the instant case arose after the July 16, 1994, effective date of the amendment to § 48-118, the amended version of the statute applies. See *Branick Indus., supra.* For the sake of completeness, we note that § 48-118 was amended again in 1997, but that amendment has no bearing on the instant appeal.

As amended in 1994, § 48-118 does not distinguish between settlement proceeds paid for pain and suffering, medical benefits, or any other category of damages or injury in awarding an insurance company a subrogation interest in the settlement proceeds. The statute says *"any* judgment or settlement." (Emphasis supplied.) § 48-118.

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999). Because § 48-118 allows Aetna to receive "a fair and equitable distribution of the proceeds of any . . . settlement" and does not limit the type of settlement proceeds from which a workers' compensation insurance company could seek subrogation, Aetna was entitled to seek payment on its subrogation claim based upon a fair and equitable distribution of the Blackmer settlement proceeds.

Our approach comports with the approach taken by a number of other jurisdictions. See, e.g., *United States v. Lorenzetti*, 467 U.S. 167, 104 S. Ct. 2284, 81 L. Ed. 2d 134 (1984) (holding United States, as employer of injured worker, was entitled to be reimbursed for compensation it paid pursuant to Federal Employees' Compensation Act out of any settlement made in satisfaction of third-party liability, regardless of whether settlement is for losses other than medical expenses and lost wages); *Sourbier v. State*, 498 N.W.2d 720 (Iowa 1993) (state workers' compensation statutes permit employer to recoup moneys from third-party payments received by employee as damages for physical and mental pain and suffering); *Eddington Estate v Eppert Oil*, 441 Mich. 200, 490 N.W.2d 872 (1992) (workers' compensation insurer is entitled to seek reimbursement from entire amount of third-party tort recovery of estate obtained as result of death of employee, regardless of classification of dam-

ages); *Breen v. Caesars Palace*, 102 Nev. 79, 715 P.2d 1070 (1986) (employer's subrogation interest in total proceeds of medical malpractice settlement included that portion of settlement proceeds attributable to noneconomic losses, notwithstanding that workers' compensation act did not compensate employees for noneconomic damages); *Dearing v. Perry*, 499 N.E.2d 268 (Ind. App. 1986) (amounts recovered for pain and suffering in injured worker's suit against third-party tort-feasor subject to workers' compensation insurer's statutory lien).

Accordingly, we reverse the decision of the district court denying Aetna any subrogation interest in the Blackmer settlement. Because we have affirmed the jury's award of damages in this case, upon remand, the district court shall determine Aetna's subrogation interest by ordering a fair and equitable distribution of the proceeds of the jury verdict and the Blackmer settlement, in accordance with the provisions of § 48-118.

(b) Richard's Motion for Attorney Fees

Following trial, Richard filed a motion for attorney fees, which the district court denied. Richard claims on cross-appeal that pursuant to § 48-118, he is entitled to receive from Aetna the payment of reasonable attorney fees and expenses. In view of our ruling reversing and remanding the subrogation claim of Aetna for consideration under § 48-118, we reverse the district court's ruling denying Richard's motion for attorney fees and expenses and remand the cause for consideration under § 48-118.

With regard to the payment of attorney fees and expenses, § 48-118 provides, inter alia, as follows:

> If the employee or his or her personal representative or the employer or his or her compensation insurer join in the prosecuting of [a claim against the third-party tort-feasor] and are represented by counsel, the reasonable expenses and the attorney's fees shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court before which the case is pending[.]

On appeal, we do not decide the amount of attorney fees and expenses, if any, Richard is entitled to receive from Aetna. However, in view of our reversal and remand of Aetna's subrogation claim, the district court shall, in connection with its con-

sideration of Aetna's subrogation claim, also consider the division of attorney fees and expenses in accordance with the provisions of § 48-118. See *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000).

## VI. CONCLUSION

With respect to Liquid Controls' appeal, for the reasons stated above, we reverse the court's order and remand this cause to the district court for a pro tanto reduction of the judgment against Liquid Controls by Richard's portion of the Blackmer settlement. With respect to Aetna's cross-appeal seeking subrogation under § 48-118, we further reverse the court's order and remand this cause to the district court for an equitable distribution to Aetna of that portion of the Blackmer settlement that was paid to or on behalf of Richard, together with the judgment proceeds, in accordance with § 48-118. With respect to Richard's cross-appeal, we further reverse the court's order and remand the cause for an award of attorney fees and expenses to Richard and against Aetna, as directed by the district court in accordance with § 48-118. Finding no merit to the remaining assignments of error raised by the parties, in all other respects, we affirm.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

HENDRY, C.J., not participating.