ROD REHM, P.C., A NEBRASKA PROFESSIONAL CORPORATION,
AND RODNEY J. REHM, INDIVIDUALLY, APPELLEES, V.
TAMARACK AMERICAN, A DIVISION OF GREAT AMERICAN
INSURANCE COMPANY, A CORPORATION, APPELLANT.

623 N.W. 2d 690

Filed March 30, 2001.   No. S-99-1457.

Robert T. Grimit and Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Mandy L. Stringenz and E. Terry Sibbernsen, of E. Terry Sibbernsen, P.C., for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Rod Rehm, P.C., and Rodney J. Rehm (collectively Rehm) filed a declaratory judgment action in the district court for Lancaster County against Tamarack American (Tamarack), in which Rehm sought a declaration of rights and an order compelling Tamarack to provide Rehm with malpractice insurance coverage for a professional liability claim asserted against Rehm by Jeannine Quinn. Following trial, the jury found in favor of Rehm. Tamarack appeals from the jury verdict entered by the district court. Tamarack claims the district court erred in denying its motion for a directed verdict, in denying its motion for judgment notwithstanding the verdict and motion for a new trial, and in admitting certain expert testimony. For the reasons set forth below, we affirm the decision of the district court.

## II. STATEMENT OF FACTS

On February 23, 1993, Quinn slipped and fell on a sidewalk adjacent to Sheridan Elementary School in Lincoln, Nebraska. As a result of her fall, Quinn fractured her ankle.

In June 1993, Quinn retained Rehm. Rehm contacted the Lincoln Public Schools (LPS) on Quinn's behalf. In August 1994, Rehm engaged in settlement negotiations with LPS' insurer in an effort to resolve the matter. The insurer offered Quinn $31,000 to settle the matter, but Quinn refused the offer, believing her injury to be more substantial than the settlement offer.

On September 30, 1994, Rehm filed a petition in Lancaster County District Court on behalf of Quinn, naming LPS as the sole defendant. The petition alleged, inter alia, that LPS was negligent in the maintenance of its sidewalk and that as a result of such negligence, Quinn was injured.

On April 19, 1995, LPS filed a motion for summary judgment, claiming it was entitled to judgment as a matter of law. LPS relied on the "sidewalk rule" as the basis for its motion for summary judgment.

Historically, under the common law, cities were responsible for the care and condition of sidewalks within municipal boundaries, and no duty devolved upon an abutting owner to keep the sidewalk adjacent to such owner's property in a safe condition. In contrast, the "sidewalk rule" recognizes that this common-law rule has been abrogated by city ordinance and/or by statute. Neb. Rev. Stat. § 15-734 (Reissue 1997) provides that "[t]he owner of property abutting on public streets is . . . primarily charged with the duty of keeping and maintaining the sidewalks thereon in a safe and sound condition, and free from snow, ice, and other obstructions . . . ." Section 15-734 further provides, however, that an abutting property owner is liable for injuries sustained as a result of such owner's failure to keep and maintain the sidewalk in a safe condition only upon the owner's failure to act after receiving notice from the city that the owner needs to remedy a dangerous condition present on the sidewalk. Thus, under the "sidewalk rule," the owner of property which abuts a public sidewalk is liable for injuries that are caused by a condition on the sidewalk if the owner has been notified by the city of the dangerous sidewalk condition and fails to act. See, generally, *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996); *Stump v. Stransky*, 168 Neb. 414, 95 N.W.2d 691 (1959).

In support of its summary judgment motion, LPS stated that it did not own the sidewalk adjacent to Sheridan Elementary School, that the sidewalk was a public sidewalk, and that LPS had not received any notice from the city of Lincoln regarding the presence of snow or ice on the sidewalk. LPS argued that under § 15-734 and the cases applying the statute, absent notice from the city, LPS was not liable for Quinn's injuries.

The record indicates that at the time LPS filed its motion for summary judgment, certain statutes of limitation had run, and Quinn was no longer able to bring a claim against the city, the owner of the sidewalk, for the injuries she sustained as a result of the fall. In response to LPS' motion for summary judgment, on August 25, 1995, Rehm filed an amended petition on Quinn's

behalf, again naming LPS as the sole defendant. The amended petition asserted what Rehm believed were exceptions to the "sidewalk rule."

On November 17, 1995, the district court entered summary judgment in favor of LPS and dismissed Quinn's lawsuit. Rehm appealed the summary judgment order on Quinn's behalf to the Nebraska Court of Appeals, which affirmed the district court's order in a memorandum opinion. *Quinn v. Lincoln Pub. Schools*, 5 Neb. App. xvii (case No. A-95-1393, May 9, 1997). This court denied Quinn's petition for further review on June 25, 1997.

After Quinn's petition for further review was denied, she contacted another attorney (new counsel) concerning Rehm's representation of her in the negligence case. In a letter dated October 3, 1997, new counsel notified Rehm that Quinn was considering bringing a malpractice action against Rehm. New counsel stated that Rehm had "breached the standard of care" he owed to Quinn by (1) not recognizing all of the potential defendants in the case, in particular, the city; (2) not recognizing the legal significance of § 15-734; and (3) not filing a tort claim against the city within the statutory time period.

Following receipt of new counsel's letter, Rehm contacted Tamarack, which was his professional liability insurance carrier at that point in time. On October 14, 1996, Tamarack had issued a lawyer's professional liability insurance policy to Rehm, with a policy period of November 23, 1996, to November 23, 1998. Prior to the issuance of the Tamarack policy, Rehm testified that he had been insured for professional negligence by "HOME Insurance." Although Tamarack had not insured Rehm for professional negligence during the time Rehm had represented Quinn at the trial level, the Tamarack policy provided professional liability coverage to Rehm for acts which occurred prior to November 23, 1996, the policy's effective date, so long as the policy's coverage language was met. Specifically, subsection II.A.2 of the Tamarack policy, under the section entitled "Lawyers Professional Liability Insurance Policy Coverage Form," stated that Tamarack would pay for claims made against Rehm during the policy period, which claims arose prior to the policy period,

> provided that prior to the effective date of the first Lawyers Professional Liability Insurance Policy issued by

[Tamarack] to [Rehm] and continuously renewed and maintained in effect to the inception of this policy period:

(a) [Rehm] did not give notice to any prior insurer of any such act, error or omission; and

(b) [Rehm] had no reasonable basis to believe that [he] had breached a professional duty or to foresee that a claim would be made against [him]; and

(c) there is no prior policy or policies which provide insurance for such liability or claim . . . [.]

After Rehm notified Tamarack of Quinn's malpractice claim, Tamarack asked Rehm to write the company a brief narrative describing the Quinn case. On October 27, 1997, Rehm sent a letter to Tamarack detailing his representation of Quinn. In the letter, exhibit 20, Rehm explained the procedural history of the case and the steps he had taken in his representation of Quinn. Rehm also described a conversation he had had with Quinn as follows:

Once the Motion for Summary Judgment had been filed, I had a discussion with Jeannine [Quinn] that I now regret. I frankly told her that I had not analyzed the case correctly and that I felt bad we had turned down the previous settlement offer, and declined to mediate. She and I had a long discussion about it and for a long time, I felt she was not going to make a claim because she was aware that mistakes are made and she knew the effects of a malpractice action on the doctors that she worked for.

In a letter dated November 20, 1997, exhibit 21, Rehm wrote Tamarack to clarify his remarks regarding the " 'unfortunate conversation.' " Rehm explained that he "did not feel that [he] had committed malpractice."

On December 16, 1997, Tamarack notified Rehm that it was denying coverage for Quinn's malpractice claim, based upon the provisions of subsection II.A.2 quoted above. On February 23, 1998, Rehm filed a petition for declaratory judgment with the district court for Lancaster County, seeking, inter alia, a declaratory judgment that the Tamarack professional liability insurance policy provided coverage to Rehm for Quinn's malpractice claim.

Rehm's petition came on for jury trial on October 26, 1999. The trial lasted 4 days, and the record contains approximately 300 pages of testimony from four witnesses and 38 numbered

exhibits. To the extent they are necessary, further facts and rulings from the trial are incorporated in our analysis below.

Tamarack moved for a directed verdict at the conclusion of the presentation of Rehm's case and renewed the motion for directed verdict at the conclusion of all of the evidence. The trial court denied both of these motions. On October 28, 1999, the case was submitted to the jury.

On October 29, 1999, the jury reached a verdict, finding in favor of Rehm. On a verdict form, the jury answered "yes" to each of the following questions:

> Question #1:
> Has Rehm shown, by the greater weight of the evidence, that prior to the effective date of the insurance policy issued by the defendant, he had no reasonable basis to believe that he had breached a professional duty to Jeannine Quinn?
>
> . . . .
> Question #2:
> Has Rehm shown, by the greater weight of the evidence, that prior to the effective date of the insurance policy issued by the defendant, he had no reasonable basis to foresee that a claim would be made against him?

On November 1, 1999, the trial court entered judgment on the jury's verdict in favor of Rehm and ordered that Tamarack provide coverage to Rehm for the malpractice claim asserted by Quinn.

On November 8, 1999, Tamarack filed its motion for new trial and for judgment notwithstanding the verdict. The combined motion came on for hearing on November 12, and in an order filed November 24, the trial court denied Tamarack's combined motion in its entirety.

Tamarack appeals.

## III. ASSIGNMENTS OF ERROR

Tamarack assigns six errors which, restated, combine to form four. Tamarack claims that the district court erred (1) in overruling Tamarack's motion for directed verdict, (2) in overruling Tamarack's motion for judgment notwithstanding the verdict, (3) in overruling Tamarack's motion for new trial, and (4) in allowing Rehm's expert witness to testify at trial.

## IV. STANDARDS OF REVIEW

[1-3] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *King v. Crowell Memorial Home, ante* p. 177, 622 N.W.2d 588 (2001). The party against whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. *Genetti v. Caterpillar, Inc., ante* p. 98, 621 N.W.2d 529 (2001). If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Id.*

■■■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. *Id.*; *Jameson v. Liquid Controls Corp.*, 260 Neb. 489, 618 N.W.2d 637 (2000). A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Id.*

■■■ On a motion for judgment non obstante verdicto, or notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.*

■■■ To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of the litigant complaining about evidence admitted or excluded. *Nickell v. Russell*, 260 Neb. 1, 614 N.W.2d 349 (2000).

## V. ANALYSIS

### 1. OVERRULING OF MOTION FOR DIRECTED VERDICT

At trial, the jury was asked to decide issues the resolution of which would determine if subsection II.A.2 of the Tamarack

policy provided coverage to Rehm against Quinn's claim. There is no dispute between the parties that subsections II.A.2(a) and (c) regarding coverage under prior policies do not excuse Tamarack from coverage. The issue before the jury was whether under subsection II.A.2(b), prior to the effective date of the policy, Rehm had a reasonable basis to believe that he had breached a professional duty or to foresee that a claim would be made against him.

On appeal, Tamarack argues the district court erred in failing to sustain Tamarack's motion for directed verdict made at the end of the evidence and that as a matter of law, the court should have concluded that the Tamarack policy, subsection II.A.2(b), did not provide coverage for Quinn's malpractice claim against Rehm. Resolving the conflicts in the evidence in Rehm's favor and giving Rehm the benefit of every inference which can reasonably be drawn from the evidence, see *Genetti v. Caterpillar, Inc., supra,* we conclude that reasonable minds could differ and that more than one conclusion could be drawn from the evidence. Accordingly, we determine that the district court did not err in overruling Tamarack's motion for a directed verdict.

### (a) Did Rehm Have Reasonable Basis to Foresee Quinn Would Bring Malpractice Claim Against Him?

Under subsection II.A.2(b) of the Tamarack policy, Tamarack did not provide professional liability insurance coverage for malpractice claims which happened prior to the policy period if prior to the effective date of the policy, the insured had a reasonable basis to foresee that a claim would be made. Our review of the record shows that there was ample evidence from which a trier of fact could determine that Rehm did not have a reasonable basis to foresee, prior to the effective date of the Tamarack policy, that Quinn intended to bring a malpractice claim against him and that such evidence would sustain a finding in Rehm's favor. Thus, the district court did not err in denying Tamarack's motion for directed verdict.

Quinn testified that the "first time" she believed that Rehm had breached a professional duty to her was in September or October 1997, when she met with new counsel, which was well after the effective date of the Tamarack policy on November 23,

1996. Importantly, Quinn further stated that until she met with new counsel, she had never indicated to Rehm that she would file a malpractice claim against him. Similarly, Rehm testified that at the time Tamarack issued its professional liability insurance policy to him, he did not have a reason to foresee that Quinn would bring a malpractice claim against him.

Notwithstanding the testimonial and documentary evidence offered by Rehm, such as exhibit 20 in which he stated, "I felt she was not going to make a claim," Tamarack nevertheless claims that Rehm acknowledged during his trial testimony that prior to Tamarack's coverage, he foresaw that Quinn would make a claim against him and that a directed verdict should have been entered on this basis. Tamarack cites to the following trial testimony as constituting Rehm's purported "admission": "Q. [Rehm's counsel] And during that period of time [from when Rehm began to represent Quinn until he received new counsel's October 3, 1997, letter] you had no reason or basis to foresee that [Quinn] would make a claim against you, is that correct? A. [Rehm] No." Even were we to ignore the syntactical challenge inherent in this question and answer and treat Rehm's testimony as acknowledging the potential for a claim by Quinn, given the controverted evidence and our duty to give the nonmoving party the benefit to be drawn from the evidence, we cannot say the district court erred in denying Tamarack's motion for a directed verdict. Given this record, reasonable minds could differ regarding the conclusion to be drawn from the evidence regarding whether Rehm had a reasonable basis to foresee Quinn would bring a claim against him, and a directed verdict would not have been proper. See *Genetti v. Caterpillar, Inc., ante* p. 98, 621 N.W.2d 529 (2001).

### (b) Did Rehm Have Reasonable Basis to Believe He Had Breached Professional Duty?

Subsection II.A.2(b) provides that the Tamarack policy does not provide professional liability insurance coverage for any malpractice claims that arose prior to the effective date of the policy if the insured had a reasonable basis to believe, prior to the policy's effective date, that he or she had breached a professional duty. In its brief on appeal, Tamarack argues that a com-

ment Rehm made to Quinn and a statement in his October 27, 1997, letter to Tamarack, exhibit 20, demonstrate that Rehm had a reasonable basis to believe that he had breached a professional duty during his representation of Quinn. Tamarack argues that on the basis of this evidence, it was entitled to a directed verdict. We do not agree.

The statement relied upon by Tamarack is a comment Rehm admittedly made to Quinn that she could "get [him] on this," apparently referring to his representation of her in her case against LPS. The record indicates without contradiction that this statement was made after the effective date of the Tamarack policy. Indeed, Quinn testified that her conversation with Rehm in which he stated she could "get [him] on this" did not occur until after this court denied Quinn's petition for further review in June 1997, which was some 6 months after the Tamarack policy took effect. Thus, to the extent the statement constitutes an admission on Rehm's part that at some point he reasonably believed he had breached a professional duty, it was not made until after the effective date of the policy. Giving Rehm the benefit of every inference which can be drawn from this evidence, see *Genetti v. Caterpillar, Inc., supra*, it was not error for the district court to deny Tamarack's motion for directed verdict on this basis.

Tamarack also relies upon Rehm's October 27, 1997, letter, exhibit 20, which was admitted into evidence during the trial, in support of its claim that it was entitled to a directed verdict. In the letter, Rehm described a conversation he had had with Quinn after LPS had filed its motion for summary judgment on April 19, 1995. In the letter, Rehm stated that he had "told her [Quinn] that [he] had not analyzed the case correctly and that [he] felt bad [they] had turned down the previous settlement offer, and declined to mediate." Because this statement was made before the Tamarack policy took effect, Tamarack argues that this statement constitutes an admission by Rehm that he made a mistake in analyzing Quinn's case; that as a result of his mistaken analysis, his client had been harmed through her failure to accept a settlement offer; and that therefore, Rehm had a reasonable basis to believe he had breached a professional duty prior to the effective date of the policy. Were this the only evidence in the record from which a jury could determine what Rehm actually knew con-

cerning the propriety of his representation of Quinn, Tamarack's argument would be more persuasive. The record, however, contains contradictory evidence as to Rehm's knowledge, prior to the effective date of the policy, on the issue of his understanding of a possible breach of his professional duty to Quinn.

First, as noted above, Rehm's November 20, 1997, letter to Tamarack, exhibit 21, was also admitted into evidence. In this letter, Rehm sought to clarify the description of his conversation with Quinn which was contained in his earlier letter of October 27. In his letter of November 20, Rehm stated that when he had the conversation with Quinn regarding his failure to analyze the case correctly, he did not "feel that [he] had committed malpractice." Rather, he states in his November 20 letter that he was trying to convey to Quinn that if the summary judgment motion proved successful, they would both regret having turned down the earlier settlement offer.

Second, during the trial, Rehm testified that after LPS filed its summary judgment motion, he concluded that if the sidewalk rule governed, Quinn would not be successful in her suit against the school district based on the original petition. He further testified that following the filing of the summary judgment motion, he researched the sidewalk rule, and as a result of this research, he concluded that under the law of Nebraska, as well as other jurisdictions, there were exceptions to the sidewalk rule which were applicable to Quinn's case against LPS. Rehm testified that thereafter, he gathered evidence from LPS employees, a snow removal operator, and a "slip and fall expert" supporting these exceptions to the sidewalk rule, and that on August 25, 1995, he filed an amended petition based upon these exceptions. As a result of these actions, Rehm testified that as of the date of the district court's ruling granting LPS' motion for summary judgment on November 17, 1995, he did not feel that he had breached a professional duty to Quinn. Rather, he testified that he thought he had stated the claim correctly in Quinn's amended petition, after admittedly having stated it incorrectly in the original petition. Rehm further testified that after the district court ruled against Quinn on LPS' motion for summary judgment, he still believed Quinn had a viable claim which would be recognized upon appeal.

Rehm testified that had he been more aware of the sidewalk rule at the inception of the litigation, he would have commenced Quinn's lawsuit with the allegations contained in her amended petition. He testified that even if he had known at the start of the litigation that the city owned the sidewalk in question, he would not have named the city as a defendant because, in his opinion, he would not have been able to convince a jury that the city was responsible for Quinn's injuries.

Based upon our review of the record, we conclude there is evidence about which reasonable minds could differ and that there is evidence which would sustain a finding in favor of Rehm as to what Rehm's knowledge was prior to the effective date of the policy concerning his breach of a professional duty. The record precludes entry of a directed verdict against Rehm. See *Genetti v. Caterpillar, Inc., ante* p. 98, 621 N.W.2d 529 (2001). Accordingly, we conclude that Tamarack's assignment of error claiming that the district court incorrectly denied its motion for directed verdict is without merit.

### 2. MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT AND FOR NEW TRIAL

Tamarack assigns as error the district court's overruling of its motion for judgment notwithstanding the verdict and motion for new trial. In support of its argument that the district court erred, Tamarack essentially relies upon the same arguments it raised in support of its motion for a directed verdict.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. *Genetti v. Caterpillar, Inc., supra*; *Jameson v. Liquid Controls Corp.*, 260 Neb. 489, 618 N.W.2d 637 (2000). A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Id.* In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). For the reasons stated above in connection with our discussion regarding the correctness of the district court's denial

of Tamarack's motion for directed verdict, the district court did not err in overruling Tamarack's posttrial motions. Accordingly, these assignments of error are without merit.

### 3. ADMISSION OF EXPERT TESTIMONY

Finally, Tamarack assigns as error the district court's failure to grant Tamarack's motion in limine, which motion sought to preclude Rehm's expert witness from testifying. The substance of Tamarack's objection to the testimony of Rehm's expert was renewed at trial, and we understand Tamarack's appeal to be from the district court's overruling of its objection. See *Allphin v. Ward*, 253 Neb. 302, 570 N.W.2d 360 (1997) (stating that when motion in limine to exclude evidence is overruled, movant must object when particular evidence which was sought to be excluded by motion is offered during trial to preserve error for appeal). In order to constitute reversible error in a civil case, the admission of evidence must unfairly prejudice a substantial right of the litigant complaining about evidence admitted. *Nickell v. Russell*, 260 Neb. 1, 614 N.W.2d 349 (2000).

Rehm's expert witness, an attorney, testified as to whether Rehm had met the standard of care in his representation of Quinn in her slip-and-fall case. Tamarack offered its own expert, also an attorney, who offered testimony on the same topic. In the context of this case which involves the issue of coverage under a professional liability policy, the district court did not err in overruling Tamarack's objection. See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999) (concluding that expert testimony as to attorney's standard of conduct in particular circumstance was admissible). There is no merit to this assignment of error.

### 4. ATTORNEY FEES

Pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1998), which provides generally that an insurance policy beneficiary who successfully sues his or her insurance company is entitled to a reasonable attorney fee at the trial level and on appeal, Rehm has moved for an award of attorney fees in this appeal. In accordance with § 44-359, Rehm is entitled to attorney fees on appeal. We determine that $2,000 is a fair and reasonable attorney fee on appeal and, accordingly, award Rehm that amount.

## VI. CONCLUSION

For the reasons set forth herein, we affirm the district court's orders denying Tamarack's motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial and the district court's order overruling Tamarack's objection to the expert testimony offered by Rehm. Attorney fees are awarded to Rehm on appeal in the amount of $2,000.

AFFIRMED.

WRIGHT and STEPHAN, JJ., not participating.