LONNIE NICKELL, APPELLANT, V. JOHN RUSSELL, INDIVIDUALLY, AND JOHN RUSSELL AND DENNIS PESTAL, A PARTNERSHIP, REAL NAME UNKNOWN, APPELLEES.

614 N.W. 2d 349

Filed July 21, 2000. No. S-98-772.

William A. Wieland and Jeffry D. Patterson, of Healey & Wieland Law Firm, for appellant.

Stephen L. Ahl, Dean J. Sitzmann, and Thomas B. Wood, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellee John Russell.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

This personal injury case, which is before us for the second time, see *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995) (*Nickell I*), involves an accident in which the defendant John Russell, while operating a pickup truck close to midnight on June 28, 1986, in rural Lancaster County, Nebraska, struck and injured the plaintiff, Lonnie Nickell. Nickell was lying down in approximately the middle of a gravel road. In *Nickell I*, the district court had directed a verdict that Russell was negligent as a matter of law and that Nickell was not contributorily negligent and, thereafter, entered judgment pursuant to a jury verdict for Nickell in the amount of $600,000. On appeal, we

held that under the range of vision rule, Russell was negligent as a matter of law because Russell had observed an object in his path and that no exception to the rule was applicable because Russell saw the object (Nickell's body) in time to avoid it. *Nickell I*. This court, however, determined that there was sufficient evidence from which a jury could reasonably infer that Nickell acted negligently by lying down on the gravel road; consequently, we decided that a jury question was presented regarding Nickell's contributory negligence. *Id*.

We, therefore, affirmed the judgment of the district court in part, and in part reversed the judgment and remanded the cause to the district court for a new trial based on our conclusions. *Id*. The evidence adduced upon retrial of this matter was similar, in many respects, to the evidence adduced in the first trial. Thus, we will set forth only those facts which are pertinent to the issues raised in the instant appeal. The reader may refer to *Nickell I*, as necessary, for a more complete description of the first trial and the reasons for our decision therein.

## SECOND TRIAL: FACTUAL AND PROCEDURAL BACKGROUND

Nickell had filed a petition sounding in negligence against Russell in his individual capacity and against Russell and Dennis Pestal as a partnership. There is no issue on appeal as to the matter of the partnership liability.

Nickell's petition alleged that on June 28, 1986, Russell failed to maintain a proper lookout and failed to keep his pickup truck under reasonable control when he struck Nickell with his pickup truck on West Princeton Road, a rural county road in Lancaster County which runs east and west. Nickell further alleged that as a result of Russell's negligence, Nickell suffered an amputation of his right arm, a fractured right leg, a fractured pelvis, a closed head injury, and psychological damage. Nickell sought medical expenses, as well as general damages for pain and suffering, disability, and disfigurement.

Russell asserted in his answer that Nickell's own negligent acts and omissions proximately caused and contributed to Nickell's injuries. Specifically, Russell alleged that Nickell lay down in the road after dark when he knew or should have known

that motor vehicles might be using the roadway and that Nickell failed to maintain a proper lookout. Russell also alleged that Nickell knew or should have known that Nickell would be difficult to see in his reclining position. Further, Russell alleged that Nickell assumed the risk of being struck by a vehicle because Nickell knew and appreciated the danger of reclining on the road while tired, that Nickell voluntarily and deliberately exposed himself to the danger, and that Nickell's own actions proximately caused his injuries.

The following evidence was adduced at the second trial: On June 28, 1986, at some time after 10 p.m., Nickell sneaked out of his parents' farmhouse and headed south across a field to West Princeton Road. Nickell went to the south side of the road and stood in the ditch, awaiting the arrival of two friends. Nickell became tired of standing and decided to sit down; eventually, he grew tired of sitting and decided to lie down on the gravel pile along the road. Nickell lay down with his legs along the south side of the road, a position from which he could see approximately a quarter of a mile to the east. The next thing Nickell recalled was waking up in the hospital.

As it extends past the Nickells' property, West Princeton Road contains a rather large hill to the east of the Nickells' property, in addition to a long, gradual hill which crests to the west of the property. Nickell lay down between the crests of the two hills, at a place subsequently determined to be on the gradual incline toward the crest of the hill to the west of the Nickells' property. At trial, Nickell acknowledged the danger of his decision to lie down on the side of the road.

Immediately prior to the accident, Russell was driving westbound on West Princeton Road at approximately 35 to 40 miles per hour. Russell testified that he first became aware of something in the roadway as he "felt [himself] going up a hill." Russell indicated where he first noticed the object in the roadway and marked that location on a photograph introduced at trial. The evidence reveals that the incline actually started to the east of the point marked by Russell on the photograph, but that the road in the area was relatively flat.

Russell testified that his initial observations of the "object" in the roadway led him to believe that it was either trash, a board,

a pile of rags, or something of a similar nature. Russell estimated that approximately 3 to 4 seconds elapsed between the time he first saw the object until it disappeared under the hood of his vehicle. As he neared the object, Russell applied his brakes and swerved in an attempt to avoid hitting the object with his wheels, but elected not to abruptly apply his brakes or to turn sharply because he did not want to roll his vehicle or to grind the object beneath it. Just before the object disappeared under the hood of his vehicle, Russell realized it was a human form. The record shows that Russell at no time consumed alcohol on the day of the accident.

After running over Nickell, Russell turned around and went to see what had happened; he saw Nickell lying on the road with his right arm completely severed from his body. Russell put Nickell and his severed arm in the bed of Russell's pickup truck and began driving eastbound on West Princeton Road, when he encountered two teenagers in a car backing out of the Nickells' driveway. Russell requested the assistance of the two teenagers and was advised that the nearest medical facility was the Crete hospital, to which Russell proceeded with Nickell. While at the Crete hospital, Russell spoke to Paul Jacobsen, a sergeant with the Lancaster County sheriff's office, who was investigating the accident.

Jacobsen memorialized his investigation and some conclusions reached therefrom in an accident report, which report assisted him in his testimony at the first trial in this matter. Portions of Jacobsen's testimony from the first trial were read into evidence in the instant case, as Jacobsen died prior to the second trial. Those portions of Jacobsen's testimony pertinent to the resolution of this appeal are more fully developed in our analysis.

Expert witness James Summers, a consulting engineer, prepared an accident reconstruction study for Nickell. In that role, Summers conducted a land survey in which he located various points, including the point 400 feet east of the point of impact at which West Princeton Road begins to incline. With reference to the crucial issue of perception, Summers testified about tests he had conducted on West Princeton Road in June 1990, during which he used Russell's pickup truck to see if its headlights were such that Russell could not have detected an object lying in the

roadway at night. Summers placed upon the roadway a mannequin dressed in clothing similar to that worn by Nickell on the night of the accident and determined that the object began to be illuminated from 400 feet away. During cross-examination, Summers conceded that misidentification and perception affect how a driver reacts to an object in the roadway and that people generally react quicker to expected objects in the roadway.

Dr. John Flowers, a professor of psychology at the University of Nebraska-Lincoln, testified on behalf of Russell regarding the perception issue. Flowers' specialty areas include human information processing, cognitive processes, and human performance. Flowers testified that a lack of expectancy is a key part of human perception and that unexpected objects may take up to twice as long to identify as expected objects. Flowers also asserted that perception is affected if a person observes objects while moving and that such perceptions generally are not as accurate as if that same person observed the same objects while stationary. According to Flowers, the dark blue shirt and denim jeans worn by Nickell on the night of the accident would not have created a high degree of contrast with the surface of West Princeton Road.

After the defense rested, Nickell made a motion to strike Russell's testimony based on the ground that the previous testimony Russell had given in depositions and at the first trial revealed that his testimony at this second trial was altered to meet the exigencies of the case. Shortly after Nickell's motion, Russell made a motion for a directed verdict on the issue of Nickell's contributory negligence. Nickell contended that the issue of contributory negligence should not be submitted to the jury, arguing that the evidence was insufficient to do so. Both motions were overruled by the district court, and the issue of Nickell's contributory negligence was submitted to the jury. The jury returned a verdict in favor of Russell, from which Nickell timely appealed. We moved the case to our docket pursuant to our authority to regulate the dockets of the appellate courts. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Nickell alleges, renumbered, that the district court erred in (1) sustaining Russell's hearsay objection to the prior testimony of

Jacobsen, (2) submitting the issue of Nickell's contributory negligence to the jury, (3) overruling Nickell's motion to strike Russell's testimony, (4) excluding an exhibit offered to impeach Flowers, (5) admitting the opinions of Flowers, and (6) failing to give either of Nickell's proposed jury instructions regarding burden of proof.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is a factor only when the rules make such discretion a factor in determining admissibility. *Snyder v. EMCASCO Ins. Co.*, 259 Neb. 621, 611 N.W.2d 409 (2000). To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of the litigant complaining about evidence admitted or excluded. *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999); *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999). See, also, Neb. Rev. Stat. § 27-103 (Reissue 1995).

## ANALYSIS

### § 27-106: RULE OF COMPLETENESS

Nickell asserts in his first assignment of error that the district court erred in sustaining Russell's hearsay objection to the reading of certain portions of Jacobsen's testimony from the first trial. As noted earlier, Jacobsen is deceased and portions of his testimony from the first trial were read into evidence in the instant case. Nickell contends that certain parts of Jacobsen's testimony were read into evidence by Russell and that other portions of Jacobsen's testimony, offered by Nickell, should have been admitted under either Neb. Rev. Stat. § 27-106 (Reissue 1995) (rule of completeness) or Neb. Rev. Stat. § 27-804(2)(a) (Reissue 1995). We agree and, for the reasons that follow, conclude that Nickell is entitled to a new trial.

Section 27-106 provides in pertinent part:

(1) When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. . . . When

a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

(2) The judge may in his discretion either require the party thus introducing part of a total communication to introduce at that time such other parts as ought in fairness to be considered contemporaneously with it, or may permit another party to do so at that time.

We extensively discussed the rule of completeness, § 27-106, in *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993), and explained that § 27-106 is a rule that comes into play when a statement is admitted into evidence out of context. Because § 27-106 is concerned with the danger of admitting certain statements taken out of context, we stated that "additional evidence is admissible only if it qualifies or explains the previous testimony." 244 Neb. at 143, 504 N.W.2d at 832. This court also stated in *State v. Schrein* that under § 27-106, when evidence proffered by defense counsel "leaves a false impression, the trial court may allow the use of otherwise inadmissible evidence to clarify or complete an issue opened up by defense counsel." 244 Neb. at 143, 504 N.W.2d at 832. Further, § 27-106 may allow the admission of "explaining matter that otherwise might not have been admissible as hearsay, opinion, or the like." 244 Neb. at 144, 504 N.W.2d at 832.

In the instant case, Russell introduced a portion of Jacobsen's testimony from the first trial which indicated that the collision occurred in the middle of the traveled portion of the road and that there was no indication that Russell had traveled anywhere other than in the middle portion of the gravel road. Russell also introduced into evidence another portion of Jacobsen's testimony which suggests that any motorist would be surprised to see someone lying on the road in the middle of the night and that "deceleration marks were not of enough length to indicate any great or excessive speed." After Russell read into evidence the foregoing statements of Jacobsen, Nickell proffered Jacobsen's ultimate conclusion that "[d]ue to the dry and normal road conditions existing at the time, it is this deputy's opinion that Mr. Russell immediately recognized the object, as being a danger or

a danger to himself, there would have been adequate time for him to stop or take other evasive action." When Nickell offered this portion of Jacobsen's testimony, the court sustained Russell's hearsay objection and did not allow the testimony to be read to the jury.

Those portions of Jacobsen's testimony offered by Russell, and admitted into evidence, would suggest to the jury that Jacobsen, a neutral investigating officer, had concluded that the accident was due only in slight part, if any, to Russell's negligence. That portion of Jacobsen's testimony offered by Nickell, however, would suggest to the jury that Jacobsen may have ultimately reached a different conclusion, i.e., that Russell had adequate time to avoid colliding with Nickell. In other words, Nickell attempted to offer portions of Jacobsen's testimony that would qualify and explain those portions of Jacobsen's testimony read into evidence by Russell. Based on § 27-106, we conclude that the district court abused its discretion in precluding that portion of Jacobsen's prior testimony offered to be read into evidence by Nickell.

■ Of course, the district court's erroneous exclusion of Jacobsen's testimony is reversible only if Nickell was prejudiced by the exclusion of Jacobsen's testimony. See, *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999); *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997). See, also, § 27-103. Since this action accrued prior to February 8, 1992, we note that Nickell would be barred from recovery if his contributory negligence was more than slight and Russell's negligence was not gross in comparison. See Neb. Rev. Stat. § 25-21,185 (Reissue 1995). The district court's ruling certainly affects substantial rights of Nickell, as those portions of Jacobsen's testimony which were admitted at trial were taken out of context and suggest that Russell was only slightly negligent, if negligent at all. Nickell sought to place Jacobsen's testimony back into context by informing the jury that Jacobsen's ultimate conclusion was that Russell may have had adequate time to stop his vehicle prior to the accident. The district court's ruling did not allow the jury to fully evaluate Jacobsen's testimony from the first trial and unfairly prejudiced Nickell's rights. We determine that those portions of

Jacobsen's testimony in Nickell's offer of proof were admissible under § 27-106, in order to fully explain those portions of Jacobsen's testimony introduced by Russell, and the district court's ruling to the contrary constitutes reversible error. Thus, Nickell is entitled to a new trial.

We find it necessary to briefly address the district court's exclusion of portions of Jacobsen's testimony as hearsay, since Russell contends that the offending portion of Jacobsen's testimony was "hearsay within hearsay," i.e., the portion of Jacobsen's testimony offered by Nickell consists of Jacobsen's reading from his police report. While "[t]he proffer of . . . testimony given at another trial [does raise] a hearsay question because live evidence is not being offered in front of the factfinder in the case now on trial," 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 804.04[1][a] at 804-29 (2d ed. 2000), such hearsay evidence is not to be excluded by the hearsay rule if it satisfies the requirements of § 27-804(2)(a).

 Section 27-804(2)(a) provides a statutory exception to the hearsay rule for former testimony falling within its parameters because the opportunity for cross-examination, the administering of an oath, the solemnity of the occasion, and the accuracy of modern methods of recording testimony all combine to give former testimony a high degree of reliability. See, 2 McCormick on Evidence § 301 (John W. Strong 5th ed. 1999); 5 Weinstein & Berger, *supra*. This court has previously acknowledged that prior testimony within the ambit of § 27-804(2)(a) is not to be excluded by the hearsay rule. See *State v. Evans*, 212 Neb. 476, 323 N.W.2d 106 (1982).

Jacobsen's testimony was given in a prior trial of this same case. Jacobsen has since died, thereby rendering him unavailable to testify in the instant case. Because this trial involves the same parties and identical issues as the previous trial, and because Russell was given an adequate opportunity to cross-examine Jacobsen and raise timely objections in that previous trial, Jacobsen's prior testimony was admissible under § 27-804(2)(a). Thus, the district court erred by sustaining Russell's hearsay objection to Jacobsen's prior testimony.

Even though Russell contends that the portion of Jacobsen's testimony offered by Nickell was hearsay within hearsay,

Russell's contention in this regard is of little consequence in the instant case. As previously set forth, § 27-106 may allow the admission of "explaining matter that otherwise might not have been admissible as hearsay, opinion, or the like." *State v. Schrein*, 244 Neb. 136, 144, 504 N.W.2d 827, 832 (1993). Assuming, arguendo, that Russell is correct in his assertion that those portions of Jacobsen's former testimony offered by Nickell may generally be inadmissible as hearsay within hearsay, those statements were properly admissible in the instant case under § 27-804(2)(a) to explain and place into accurate context those portions of Jacobsen's testimony offered by Russell. See § 27-106. Consequently, Russell's assertions are without merit.

SUBMISSION OF CONTRIBUTORY NEGLIGENCE ISSUE

Even though our disposition requires that this cause be remanded for a new trial and we need not reach all of the errors assigned by Nickell, we nonetheless consider Nickell's assertion that contributory negligence was improperly submitted to the jury, since the issue has recurred once and is likely to recur upon remand.

Nickell contends that the district court erred in submitting the issue of contributory negligence to the jury because Russell adduced no evidence which would allow a juror to conclude that his lying down in the road concurred with Russell's negligently failing to stop or turn. We begin our analysis by noting that a plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury, (2) the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence, and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause. *Baldwin v. City of Omaha*, 259 Neb. 1, 607 N.W.2d 841 (2000); *Humphrey v. Burlington Northern RR. Co.*, 251 Neb. 736, 559 N.W.2d 749 (1997). A defendant is entitled to judgment as a matter of law under the slight-gross comparison of § 25-21,185 for actions accruing before February 8, 1992, if he or she proves that (1) a plaintiff's contributory negligence was more than slight as a matter of law or (2) the defendant's negligence was not gross in comparison to the plaintiff's negligence as a matter of law. See

*Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996). However, if reasonable minds might draw different conclusions from the facts adduced at trial, the issues of negligence and contributory negligence are for the jury. *Humphrey v. Burlington Northern RR. Co., supra*; *Harrison v. Seagroves, supra.*

We have previously affirmed the district court's directing a verdict in favor of Nickell on the issue of Russell's negligence, *Nickell I*, and that remains the law of this case. The question presented by Nickell's assignment of error is whether evidence was adduced at trial from which reasonable minds could draw different conclusions as to Nickell's contributory negligence. We conclude that such evidence was adduced and that the issue of Nickell's contributory negligence was properly submitted to the jury.

The record before us readily reveals evidence very similar to that relied upon by this court in *Nickell I*. Nickell testified that he lay down on the side of the road after he became tired of standing. Further, Nickell maintained that while he was concerned about traffic, he was concerned only about traffic from the west, or the opposite direction from which Russell emerged. We said in *Nickell I*, and we reiterate in this case, that "[c]ommon sense dictates that generally it is . . . negligent to lie down on or beside the road, oblivious to the dangers of traffic. When substantial evidence shows that the plaintiff contributed to the collision, the issue of contributory negligence should be considered by the jury." 247 Neb. at 127, 525 N.W.2d at 212.

Nickell, however, asserts that his negligence was only passive, therefore creating a condition, while Russell's negligence was the moving and effective cause of the accident, thereby rendering the latter the sole proximate cause of his injuries. Nickell's argument in this regard misconstrues our proximate cause jurisprudence and is without merit.

We explained in *Sacco v. Carothers*, 253 Neb. 9, 17-18, 567 N.W.2d 299, 306 (1997), that a "proximate cause is a cause that produces a result in a natural and *continuous* sequence, and without which the result would not have occurred." (Emphasis in original.) Accord *Baldwin v. City of Omaha, supra.* The jury could have reasonably inferred from the evidence at trial that Nickell's voluntarily lying down on the

side of the road led to his personal injury in a natural and continuous sequence of events. Of course, Nickell's negligence alone could not have resulted in the injuries he sustained as a result of the accident, as evinced by the district court's instruction to the jury that Russell was negligent as a matter of law. However, Nickell's assertion that Russell's negligence was an efficient intervening cause, breaking the causal connection between Nickell's original negligence and his injury, is incorrect; "[t]he doctrine that an intervening act cuts off a tortfeasor's liability comes into play only when the intervening cause is not foreseeable." *Sacco v. Carothers*, 253 at 15, 567 N.W.2d at 304.

As previously explained, Nickell's testimony indicates that he was aware of the risks posed by traffic traveling upon West Princeton Road, yet he lay down along the side of the road anyway. It was sufficiently foreseeable that Nickell's lying on the side of the road could result in his being struck by traffic traveling thereon. To constitute want of due care on Nickell's part, it is not necessary that he should have anticipated the exact harm which occurred; it is sufficient that Nickell knew or should have known that substantial injury was likely to result from his act. See *Baldwin v. City of Omaha*, 259 Neb. 1, 607 N.W.2d 841 (2000). Thus, sufficient evidence was adduced upon which a jury could have based the conclusion that Nickell's contributory negligence was active at the time of the collision; his contention that the contributory negligence issue should not have been submitted to the jury is without merit. We need not consider Nickell's other assigned errors.

## CONCLUSION

The district court erroneously excluded those portions of Jacobsen's testimony Nickell sought to introduce in order to place into context portions of the same testimony introduced by Russell. Because this error prejudiced substantial rights of Nickell, we reverse the judgment of the district court and remand this matter for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.