IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. SWENSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JOHN L. SWENSON, APPELLANT.

Filed May 7, 2013.   No. A-12-277.

Appeal from the District Court for Nemaha County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Allen Fankhauser, Nemaha County Public Defender, and Diane L. Merwin for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

John L. Swenson was convicted of first degree sexual assault and exhibition of obscene material. He received concurrent prison sentences of 40 to 50 years for the sexual assault conviction and 1 year for the exhibition of obscene material conviction. On appeal, Swenson argues that the evidence does not sufficiently support the verdicts, the State committed prosecutorial misconduct, the sentence is excessive, and he was denied effective assistance of trial counsel. We reject Swenson's claims and therefore affirm the trial court's convictions and sentences.

## II. BACKGROUND

On October 1, 2010, M.E. and K.J. were at a park near M.E.'s house when they saw Swenson pull into M.E.'s driveway. Upon Swenson's arrival, the girls returned to M.E.'s house. A short time later, the girls decided that they wanted dinner and Swenson offered to drive them to a grocery store. At some point later in the evening, Swenson returned the girls home. What

exactly transpired during M.E.'s and K.J.'s time with Swenson that evening is in dispute, but M.E. contends that Swenson digitally penetrated her.

Other than telling K.J. about the sexual assault when the girls returned to M.E.'s house, M.E. did not report this incident to anyone until November 2010. A few days later, M.E. completed a forensics interview at a child advocacy center. During that interview, she stated that Swenson assaulted her and showed her and K.J. pornographic videos using his cellular telephone. One video was described as "a female using a dildo on herself," and another video was described as "Betty Boop masturbating."

Swenson was arrested in January 2011, and the case was tried in February 2012. M.E. testified at trial that she was 15 years old on October 1, 2010. She said that on that evening, she went out with both Swenson and K.J. She explained that she and K.J. know each other from taking special education classes together at high school.

According to M.E., after she, K.J., and Swenson returned home from the grocery store, they noticed they forgot to buy some items. She said that Swenson took them back to the store to buy them, but instead of returning home, Swenson began "cruising around." He left Auburn and began driving through the country. M.E. testified that she was seated in the front seat with Swenson and that K.J. was seated in back.

M.E. testified that they eventually returned to Auburn and stopped at a convenience store before proceeding to a fast-food restaurant. At the fast-food restaurant, M.E. claimed Swenson bought the girls ice cream and attempted to hold her hand, but she pulled away. At some point while they were out, Swenson gave his cellular telephone to K.J. so that she could contact her boyfriend, D.Y. The three proceeded to D.Y.'s home in Auburn after finishing at the fast-food restaurant. M.E. said Swenson was trying to tickle her side at D.Y.'s. In response, she got up and walked over to K.J., who was outside of the vehicle talking with D.Y.

After leaving D.Y.'s house, Swenson drove back toward M.E.'s house. Before reaching her home, however, he stopped under the awning at a used-car lot. While they were parked at the carlot, M.E. said she and K.J. were talking and she was texting. She said Swenson showed her a video of "a girl using a red dildo."

After showing her the video, Swenson leaned over and put his arm around her. She said that she laughed at something he said and that he then put his hand on her leg and moved it up further. She said she initially thought he was tickling her, but something was "going wrong." According to M.E., Swenson digitally penetrated her. M.E. testified that she was wearing loose jean shorts. She testified that she was leaning against the door, pushing his hand away, and telling him to stop. She described the penetration as painful.

At this time, K.J. asked what was going on, but Swenson told her nothing and "scooted back to his seat." Swenson then drove the girls back to M.E.'s house.

When they returned home, Swenson parked in the driveway and M.E. moved into the back seat with K.J. According to M.E., Swenson used his cellular telephone to show the girls a video of "Betty Boop playing with herself." She testified that Swenson allowed her to keep his cellular telephone and that she returned it to him a couple of days later, after his fiance called asking for it. M.E. also testified that while in the driveway, he asked her if she wanted to have sex with him. She said that she declined. She also testified that all of the events took place in Auburn, except driving out in the country.

On cross-examination, defense counsel impeached M.E. with multiple prior inconsistent statements she had made, both in her interview at the child advocacy center and in her deposition, regarding the exact details of what she did earlier in the day on October 1, 2010; what she did the next morning; and the timing of the various events in the evening.

K.J.'s testimony about the key events of the assault mirrored M.E.'s, although some of the details differed. For example, K.J. testified that Swenson used his laptop at the fast-food restaurant because there was an Internet connection there. M.E. did not recall that. K.J. also added that while they were parked under the awning at the carlot, M.E. started screaming and K.J. was scared.

K.J. admitted that she did not tell her mother what happened because she was "nervous" around her mother. K.J. also admitted that she did not initially tell the police what happened because her mother was with her at the interview and that K.J. was nervous about it. During the police interview, K.J. did not relay that they stopped at the carlot and also did not indicate that they went to D.Y.'s home. Despite omitting those details, K.J. did indicate that the sexual assault occurred.

On cross-examination, defense counsel impeached K.J. on the details of several of her statements, including where D.Y. was before they met up with him at his home that night, the length of time they were at the fast-food restaurant, the length of time they were at the carlot, and whether the Betty Boop video had sound.

While attacking K.J.'s credibility at trial, defense counsel asked her whether she was scared or nervous during her deposition. K.J. stated that she was nervous. Defense counsel asked her if she remembered what her response was during the deposition when he asked her if she was scared or nervous. K.J. testified that she had responded that she was not scared and that he seemed like "a pretty nice guy." On redirect, the State returned to this line of questioning and asked K.J. what defense counsel said to her in response to her comment that he seemed like a "nice guy." Defense counsel objected to the question on grounds of relevance, and the trial court overruled the objection. K.J. responded that defense counsel said he was not nice, that he was "a different kind of not nice."

D.Y. testified that he was dating K.J. in the fall of 2010 and that one evening "some guy" brought M.E. and K.J. to his house. D.Y. did not remember Swenson's name, but identified him in the courtroom as the driver. D.Y. testified that M.E. was seated in the front seat and that K.J. was seated in the back seat. D.Y. testified that he saw Swenson touching M.E. and that she was ignoring it.

M.E.'s father testified that he lived in Auburn in October 2010. He testified that M.E. is his daughter, that she was 15 years old in October 2010, and that she is in special education classes at school. He described her as "borderline mentally retarded." He testified that in October, M.E. had K.J. spend the night and that Swenson took them to the grocery store. He said they came back, threw the groceries in the house, and then left. He did not see them again until the next morning.

A sergeant with the Nebraska State Patrol testified that he interviewed Swenson in November 2010. He testified that Swenson was born in November 1978 and that he was 31 years old in October 2010. The sergeant said that when he interviewed Swenson about M.E., Swenson's response made him believe that he could not immediately remember who she was.

The sergeant said that Swenson admitted taking the girls to the grocery store, but claimed his contact with them ended when he took them back home afterward.

An officer with the Auburn Police Department testified that the police found videos on Swenson's cellular telephone consistent with descriptions given by M.E. and K.J.

In his closing argument, defense counsel argued that M.E. and K.J. were not reliable enough witnesses for the jury to return a guilty verdict. In response, the State argued that defense counsel told M.E. and K.J. what to say and that they stood up to him. The prosecutor then informed the jury:

> [Defense counsel] did the exact same thing up here to you that he did to these two girls. And he said, I'm going to tell you how you're going to decide. That's what creates difficulty about bringing out the truth is when a trained litigator comes in and says, here, we got two young children. Then to say that these two children are average or above average, they're in sped ed. They've been told they have learning disabilities. . . . That's average or above average. No way. We know that. No way. Why would he tell us that?

Following the trial, a jury convicted Swenson of first degree sexual assault and exhibition of obscene material. Swenson's presentence investigation report indicated that he lives with his fiance and her 9-year-old daughter. His highest level of education is 10th grade, and he had been steadily employed as a self-employed tree cutter for the past 2 years. He stated that when he was 5 years old, a 14- or 15-year-old male raped him for a period of 5 to 10 minutes. The male also forced him to perform oral sex on two occasions.

Swenson's criminal record indicates that prior to the date of the present offense, Swenson was convicted of second degree sexual assault of a child, retail theft, forgery in the second degree, attempted abuse of a vulnerable adult, and attempted violation of the Sex Offender Registration Act (SORA). Between the date of the present offense and sentencing, Swenson was convicted again of attempted violation of SORA, a violation of SORA, and fictitious plates. He was also charged with first degree sexual assault on a child, although the county attorney dismissed that charge.

Swenson's criminal history and antisocial patterns both placed him in the high-risk categories, his employment and procriminal attitude placed him in the medium-risk category, and his family circumstances and alcohol and drug abuse were considered to be low risk. Swenson scored 60 of 125 possible points on a reoffense risk scale assessment and 15 of 125 points on the violence scale. These scores placed Swenson in the moderate- to high-risk range overall.

The court determined that Swenson had a prior sex offense conviction and that Swenson was a predator, noting that he had a history of victimizing vulnerable people. The court found that Swenson was not a violent offender, but rationalized that violence is not necessary when you choose vulnerable victims. The court ordered Swenson to serve concurrent prison sentences of 40 to 50 years for the sexual assault conviction and 1 year for the exhibition of obscene material conviction. The court also sentenced him to lifetime community supervision.

This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Swenson argues that (1) the evidence was insufficient to support the verdicts, (2) the trial court erred in failing to declare a mistrial after the State attacked defense counsel's

character, (3) the trial court imposed an excessive sentence, and (4) his counsel did not effectively assist him.

## IV. ANALYSIS

### 1. INSUFFICIENT EVIDENCE

Swenson argues that the evidence was not sufficient to support the jury's verdicts. In particular, he alleges that the State did not sufficiently establish venue because it failed to prove the events occurred in Nemaha County and that the inconsistencies in statements given by M.E. and K.J. meant the State did not sufficiently prove that the alleged events occurred. We disagree.

In the absence of prejudicial error, an appellate court will affirm a conviction if the evidence admitted at trial, viewed and construed most favorably to the State, sufficiently supports the conviction. *State v. Fuller*, 279 Neb. 568, 779 N.W.2d 112 (2010). An appellate court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *Id*.

### (a) Venue

Swenson argues that the State did not establish that the sexual assault and exhibition of obscene material occurred in Nemaha County. Several Nebraska statutes provide guidance for establishing the appropriate venue in which to try a criminal defendant.

Neb. Rev. Stat. § 29-1301 (Reissue 2008) states, "All criminal cases shall be tried in the county where the offense was committed, except as otherwise provided in section 25-412.03 or sections 29-1301.01 to 29-1301.03 . . . ." See *State v. Meers*, 257 Neb. 398, 598 N.W.2d 435 (1999).

Neb. Rev. Stat. § 29-1301.01 (Reissue 2008) states:

> If any person shall commit an offense against the person of another, such accused person may be tried in the county in which the offense is committed, or in any county into or out of which the person upon whom the offense was committed may, in the prosecution of the offense, have been brought . . . .

Neb. Rev. Stat. § 29-1301.02 (Reissue 2008) provides:

> When an offense is committed in this state, . . . on a railroad train, or car, motor vehicle, . . . the accused may be tried in any county through, on, or over which the . . . car, motor vehicle, . . . passes in the course of its voyage or trip, or in the county in which the voyage or trip terminates.

Venue may be proved like any other fact in a criminal case. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Venue need not be established by direct testimony; if the only rational conclusion which can be drawn from the facts in evidence is that the crime was committed in the county alleged, the proof is sufficient. *Id*. In *State v. Liberator*, 197 Neb. 857, 251 N.W.2d 709 (1977), the Nebraska Supreme Court held that it could presume that the trial court and jury knew the boundaries of the county where the trial took place and that the city in question was in that county. Accordingly, in this case, we may presume the jurors knew the boundaries of the county where the trial took place and that Auburn was within that county.

Multiple witnesses in this case stated that all the events that evening, except driving around in the country, took place within Auburn, which is in Nemaha County. M.E. and her father both stated that M.E. lives in Auburn and that Swenson drove her from her home in Nemaha County to all the locations they visited before returning her to her home in Nemaha County. Regardless of whether or not the carlot, the location of the sexual assault, is in Auburn, the evidence at trial sufficiently established venue in Nemaha County, because Swenson brought M.E. in and out of Nemaha County while carrying out the offense and concluded his journey at M.E's home in Nemaha County. Accordingly, Swenson's argument that the State did not properly establish venue in Nemaha County is without merit.

### (b) Inconsistent Statements

Swenson argues that the inconsistencies in the testimony of M.E. and K.J. at trial compared with their testimony during their depositions and police interviews means that the evidence in this case did not support a guilty verdict. We disagree.

The credibility and weight of witness testimony are for the jury. *State v. Chavez*, 281 Neb. 99, 793 N.W.2d 347 (2011). An appellate court will not pass on the credibility of witnesses or reweigh the evidence. *State v. Fuller*, 279 Neb. 568, 779 N.W.2d 112 (2010).

In this case, M.E. testified that Swenson digitally penetrated her and showed her obscene material. K.J. provided supporting testimony that confirmed M.E.'s allegations. Although the witnesses had some difficulty specifying the exact length of time of various events that evening, they both testified that Swenson sexually assaulted M.E. and showed them inappropriate videos. The jury viewed those videos and determined they were obscene. Swenson does not contest this determination.

The jury was tasked with weighing the credibility of the witnesses and chose to believe the testimony of M.E. and K.J. Their testimony, viewed in the light most favorable to the prosecution, supports the jury's finding that Swenson sexually assaulted M.E. and exhibited obscene material. Swenson's assigned error is without merit.

### 2. PROSECUTORIAL MISCONDUCT

Swenson argues that he was denied a fair trial because the State committed prosecutorial misconduct by eliciting testimony from K.J. that reflected poorly on defense counsel's character and by attacking his character in closing argument. We determine that Swenson's argument is without merit because the prosecutor's statements did not rise to the level of plain error.

A party who fails to timely move for a mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such misconduct. *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997).

An appellate court, however, reserves the right to address plain error if such error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Since Swenson's counsel did not move for a mistrial, we exercise our discretionary power to review the prosecutor's conduct for plain error.

Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.*

(a) Eliciting Testimony From K.J.

Swenson argues that the State committed prosecutorial misconduct by eliciting testimony from K.J. that defense counsel had stated during her deposition that he was not a "nice guy" and by making statements during closing argument that suggested the defense counsel could not be trusted and would lie. We disagree.

Defense counsel objected to the State eliciting testimony from K.J. that defense counsel stated at her deposition that he was not a "nice guy." An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

In the instant case, defense counsel objected on grounds of relevance. The trial court properly overruled the relevance objection because defense counsel had opened the door during cross-examination. See, Neb. Rev. Stat. § 27-106 (Reissue 2008); *Nickell v. Russell*, 260 Neb. 1, 614 N.W.2d 349 (2000). Swenson's objection did not preserve the alleged error on grounds of prosecutorial misconduct, so we review for plain error.

The rule that prosecutors may not inflame the jurors' prejudices or excite their passions against the accused prevents prosecutors from intentionally eliciting testimony from witnesses for prejudicial effect. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). The invited response doctrine, however, dictates that a prosecutor does not impinge a defendant's right to a fair trial by making remarks that are "invited" and "do no more than respond substantially [to defense counsel's remarks] in order to right the scale." *U.S. v. Young*, 470 U.S. 1, 13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). See, also, *Stratton v. Dole*, 45 Neb. 472, 63 N.W. 875 (1895).

Moreover, the rule of completeness, § 27-106, provides in part that "[w]hen a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." See *Nickell, supra*. When "evidence proffered by defense counsel 'leaves a false impression, the trial court may allow the use of otherwise inadmissible evidence to clarify or complete an issue opened up by defense counsel.'" *Nickell*, 260 Neb. at 8, 614 N.W.2d at 355 (quoting *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993)).

In this case, the rule of completeness and the invited response doctrine allowed the prosecutor to elicit testimony from K.J. that may have reflected poorly on defense counsel's character. Here, defense counsel sought to diminish K.J.'s credibility by impeaching her with statements made during her deposition that were inconsistent with her trial testimony. In response, K.J. explained the inconsistencies by telling the jury that she was scared during her deposition. To show that fear was not a valid explanation, defense counsel elicited testimony that during the deposition, K.J. denied being scared because defense counsel seemed like a "nice guy." On redirect, the prosecutor sought to rehabilitate K.J. by eliciting defense counsel's retort at the deposition that she was wrong about him being a "nice guy." This statement was necessary

to fully portray the exchange that occurred during her deposition so that the jury could determine whether or not it believed K.J.'s explanation for her inconsistent statements. While the testimony had the unfortunate effect of reflecting on defense counsel's character, defense counsel necessitated the testimony by eliciting incomplete testimony on the issue, and it did not constitute prosecutorial misconduct.

### (b) Prosecution's Comments
### During Closing Argument

Swenson acknowledges that defense counsel failed to either object or move for a mistrial after the State's closing argument, but argues we should review for plain error.

Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id*.

Swenson relies on *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006), in which the Nebraska Supreme Court held under the plain error standard that a prosecutor's statements during closing arguments required reversal and a new trial. In closing arguments, the prosecutor referred to the defendant as a "'vicious dictator,'" a "'tower of terror,'" a "'two-headed hydra,'" a "'monster of mayhem,'" and a "'king of killers.'" *Id*. at 512, 723 N.W.2d at 313. During rebuttal, the prosecutor also implied that all defense attorneys are liars. The court concluded that the prosecutor's remarks were "clearly improper" and that to leave such conduct uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. at 511, 723 N.W.2d at 312. The court noted that the prosecutor's remarks were very serious and did not reflect a single, isolated instance, but were numerous. *Barfield, supra*.

In the present action, Swenson objects only to the following statement:

> [Defense counsel] did the exact same thing up here to you that he did to these two girls. And he said, I'm going to tell you how you're going to decide. That's what creates difficulty about bringing out the truth is when a trained litigator comes in and says, here, we got two young children.

When reviewing the comment in context and the record as a whole, we find that this comment does not rise to the level of plain error requiring reversal. Even assuming, without deciding, that these comments were improper, it cannot be said that they prejudiced Swenson. These were a few isolated comments in a long closing argument and rebuttal, and many were invited by defense counsel. Moreover, any resulting prejudice to Swenson was not of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process. The comments from *Barfield, supra*, that met that standard were repetitive, clearly improper, and quite egregious. The comments at issue here simply do not rise to that level. Because we find that the prosecutor's comments do not rise to the level of misconduct, we decline to reverse on the basis of plain error.

### 3. EXCESSIVE SENTENCE

Swenson argues that his sentence is excessive because the trial court failed to consider the fact that he did not cause serious personal injury to M.E. Swenson also argues that the

sentence was excessive because it was partly based on a prior conviction for a consensual sexual offense. We disagree with Swenson's assertions.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Thurman*, 273 Neb. 518, 730 N.W.2d 805 (2007).

(a) Consideration of Serious
Personal Injury

Neb. Rev. Stat. § 28-319(2) (Reissue 2008) states, "Sexual assault in the first degree is a Class II felony. The sentencing judge shall consider whether the actor caused serious personal injury to the victim in reaching a decision on the sentence." "Serious personal injury" is defined in Neb. Rev. Stat. § 28-318(4) (Cum. Supp. 2012) as "great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."

The record does not indicate if the sentencing judge considered whether Swenson caused serious personal injury to M.E. Given that Swenson raises this potential omission in the context of a claim of excessive sentence, we determine that any error in this regard is harmless based upon Swenson's prior history.

When imposing any sentence, a sentencing judge should consider the eight factors set forth above. Section 28-319(2) adds an additional factor for the sentencing judge to consider in cases of first degree sexual assault. The inclusion of this factor does not necessitate an evidentiary hearing, see *State v. Bunner*, 234 Neb. 879, 453 N.W.2d 97 (1990), nor does it change the gradation of the crime, or enhance the penalty. The statute does not provide any guidance about what the consequences of such a finding would be. To the extent that this represents a shortcoming in the statute, that is a matter for the Legislature. For purposes of appellate review, however, the absence in this record of any indication that the sentencing judge did or did not consider this factor does not affect our ability to review the sentence for excessiveness. An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ramirez*, 284 Neb. 697, 823 N.W.2d 193 (2012). We suggest, however, that a sentencing judge can avoid uncertainty and aid appellate review by making a specific finding as to whether there was or was not serious personal injury, although the statute does not expressly require such. In this way, all concerned will know that the statutory mandate of "shall consider" has been followed.

The statutory sentencing range for a Class II felony is 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2008). The trial court ordered Swenson to serve concurrent prison sentences of 40 to 50 years for the sexual assault conviction and 1 year for the exhibition of obscene material conviction. The record reveals that Swenson had a previous conviction of second degree sexual assault of a child, attempted abuse of a vulnerable adult, and prior violation of SORA. Given Swenson's past history and criminal record, he quite clearly is a predatory sex offender, and the sentence imposed on him is not excessive. Accordingly, Swenson's assignment of error is without merit.

Swenson argues that his sentence is excessive because the trial court considered his prior conviction and because that conviction was for a consensual, statutory sexual offense. This argument is without merit.

A trial court may properly consider a defendant's previous criminal history. See *State v. Thurman*, 273 Neb. 518, 730 N.W.2d 805 (2007). Although Swenson apparently thinks his prior conviction should not carry much weight because it was a statutory offense, Swenson does not challenge the validity of his prior conviction. Furthermore, Swenson does not explain how the trial court misused his prior conviction. Because it was proper for the sentencing judge to consider his prior conviction and Swenson does not explain how the judge misused it, we reject this claim.

## 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Swenson argues that his counsel did not effectively assist him because his counsel did not argue the crime was physically impossible, cross-examine certain inconsistent statements made by the witnesses, or move for a mistrial immediately after the prosecutor's inflammatory statements. Swenson argues that the record before the court is inadequate to review the claim. The State, on the other hand, argues that the record is sufficient to address Swenson's claim because Swenson was not prejudiced by his counsel's alleged failures to argue physical impossibility or further cross-examine the witnesses. The State does not address trial counsel's failure to move for a mistrial. We find the record insufficient to review the claim of ineffective assistance of counsel and therefore decline to consider Swenson's assigned error.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. In this case, the record is insufficient to consider Swenson's claims of ineffective assistance of counsel on direct appeal.

Swenson's claim that his trial counsel failed to object to the prosecutor's comments and move for a mistrial may have been a tactical or strategic decision to take the chance that the jury would return a favorable verdict. See *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980). To determine whether Swenson's counsel was ineffective in failing to move for a mistrial, a court must analyze counsel's trial strategy. The same is true of counsel's decision not to cross-examine witnesses over certain prior inconsistent statements.

While the State may be correct that Swenson cannot prove he was prejudiced by any of his counsel's failures, this court does not have an adequate record to review the cumulative effects, if any, of failing to move for a mistrial and failing to further attack the credibility of M.E. and K.J.

Accordingly, the record is insufficient to review Swenson's ineffective assistance of counsel claim on direct appeal.

## V. CONCLUSION

Because we find that the evidence sufficiently supports the verdict, that the trial court did not plainly err in not ordering a mistrial based on the prosecutor's conduct, and that the sentence is not excessive, we affirm the decision of the trial court. We find that the record is not sufficient to review Swenson's ineffective assistance of counsel claim on direct appeal.

AFFIRMED.